TOWN OF POWNAL

v.

Kenneth EMERSON.

Supreme Judicial Court of Maine.

Argued Jan. 26, 1994.
Decided March 25, 1994.

**620**

John F. Shepard, Jr. (orally), Freeport, for plaintiff.

E. Stephen Murray (orally), Murray, Plumb & Murray, Portland, for defendant.

Before WATHEN, C.J. and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

WATHEN, Chief Justice.

Defendant Kenneth Emerson appeals from a decision of the Superior Court (Cumberland County, *McKinley, J.*) affirming a decision of the District Court (Portland, *MacNichol, J.*). The District Court ordered defendant to remove material stored on his land in violation of the automobile graveyard and junkyard statute, 30–A M.R.S.A. § 3753 (Pamph.1993), and imposed a fine. Defendant argues *inter alia* that the evidence compels a finding that the materials are not junk and that the statute is unconstitutionally vague and was improperly applied. The Town cross-appeals from the Superior Court's order granting a stay pending appeal. Finding no error, we affirm the judgment.

Defendant owns land in Pownal, and it is undisputed that he has a large mass of used material stored on his land. He contends, however, that the material is simple "personal property" and not "junk." The material consists of a large amount of loose boards, iron, barrels, truck bodies, tires and wheels, buckets, cloths, tarps, pipes, tanks, a skidder, a van, two trucks, a camper body, a planer on an open trailer, wheelbarrows, and many other objects that are unidentifiable. Some of the vehicles are in pieces or stored on blocks, and the selectmen of the Town testified that they were junk. The evidence supports the conclusion that most of the vehicles did not run and could not currently be registered. Defendant agreed that there was "a mess" on his land, and the photographs in evidence support that conclusion, but he testified that he intended to use each item.

■ The District Court held that, notwithstanding defendant's stated interest in the material, he was maintaining an unlicensed automobile graveyard[1] and junkyard.[2] It ordered defendant to pay a fine of $2500, clean up the property by a specified date or to face an additional fine of $100 per day, and to pay the Town's legal fees of $1500. Defendant appealed to the Superior Court. After ordering a stay of the District Court's order until the final resolution of all appeals, the Superior Court denied defendant's appeal. We review the District Court's decision directly, *State v. Clisham,* 614 A.2d 1297, 1298 (Me.1992), and its factual findings will stand unless there is no competent evidence in the record to support them, *Morin Bldg. Prods. Co. v. Atlantic Design & Constr. Co.,* 615 A.2d 239, 241 (Me.1992).

■ Defendant argues that our opinion in *City of Auburn v. Tri–State Rubbish, Inc.,* 630 A.2d 227, 230 (Me.1993), provides that the subjective intent of the landowner determines whether material is discarded and junk. In *Tri–State Rubbish,* in the context of a solid waste flow control ordinance, we held that as between the waste generator

---

1. Automobile graveyard. "Automobile graveyard" means a yard, field or other area used to store 3 or more unserviceable, discarded, worn-out or junked motor vehicles as defined in Title 29, section 1, subsection 7, or parts of such vehicles.

    A. "Automobile graveyard" does not include any area used for temporary storage by an establishment or place of business which is primarily engaged in doing auto body repair work to make repairs to render a motor vehicle serviceable.

    B. "Automobile graveyard" includes an area used for automobile dismantling, salvage and recycling operations.

30–A M.R.S.A. § 3752(1) (Pamph.1993).

2. Junkyard. "Junkyard" means a yard, field or other area used to store:

    A. Discarded, worn-out or junked plumbing, heating supplies, household appliances and furniture;

    B. Discarded, scrap and junked lumber;

    C. Old or scrap copper, brass, rope, rags, batteries, paper trash, rubber debris, waste and all scrap iron, steel and other scrap ferrous or nonferrous material; and

    D. Garbage dumps, waste dumps and sanitary fills.

30–A M.R.S.A. § 3752(4) (Pamph.1993).

(i.e., the person putting material in a dumpster) and the waste hauler, the actions of the generator determine whether the solid material is "useless, unwanted or discarded." *Id.* Here, in the context of a land-use statute which makes no reference to intent, defendant argues that he can avoid the prohibition of the statute simply by asserting an intended use for the material. *Tri–State Rubbish* is not controlling and in fact offers no support for defendant's position. Just as the waste hauler could not avoid liability simply by claiming that he had a use for the discarded material, a landowner who stores material that meets the objective definition of the statute cannot avoid liability because he plans eventually to use the material.

■■■ Defendant next argues that the statute is unconstitutionally vague. A statute that "does not force people of general intelligence to guess at its meaning . . . is not 'void for vagueness.'" *McCallum v. City of Biddeford*, 551 A.2d 452, 453 (Me.1988); *see also State v. Crossetti*, 628 A.2d 132, 134 (Me.1993). In connection with automobiles, the statute proscribes the use of land to store "unserviceable . . . motor vehicles." 30–A M.R.S.A. § 3752(1) (Pamph.1993). Although the term "unserviceable" is not defined in the statute, a dictionary in common use defines "serviceable" as "that can be of service, *ready for use,* useful, *useable. . . ."* *Webster's New World Dictionary* 1301 (2d College ed. 1978) (emphasis added). Thus an unserviceable motor vehicle is one not ready for use or not presently useable. This interpretation is consistent with the rest of the statute, which provides in part:

> "Automobile graveyard" does not include any area used for temporary storage by an establishment or place of business which is primarily engaged in doing auto body repair work to make repairs to render a motor vehicle serviceable.

30–A M.R.S.A. § 3752(1)(A) (Pamph.1993). We reject defendant's argument that unserviceable means a motor vehicle incapable of being serviced. In effect he argues that although his vehicles are not presently useable, the theoretical possibility that they could be serviced takes them out of the statute. The District Court found that defendant's vehicles were not presently useable, and concluded that he stored unserviceable motor vehicles on his property. In connection with the prohibition against storing other forms of junk, it is sufficient to note that "scrap" is commonly understood to mean "in the form of fragments, pieces, odds and ends, or leftovers." *Webster's New World Dictionary* 1279 (2d College ed. 1978). The photographs reveal an abundant supply of scrap wood, metal and other materials. The statute is not unconstitutionally vague either as written or as applied. Defendant's remaining arguments are without merit and require no discussion.[3]

■■■ Finally, the Town argues that the Superior Court improperly stayed the order pending appeal. The Town acknowledges that the court has the discretion to order a stay, M.R.Civ.P. 62(d), but argues that the court abused its discretion because defendant appealed in bad faith. We disagree. Defendant had a colorable argument that his use of his land did not violate the statute. Although he does not prevail on appeal, he raised serious questions that have not previously been decided by this Court.

The entry is:

Judgment affirmed.

ROBERTS, CLIFFORD, COLLINS and RUDMAN, JJ., concurring.

DANA, Justice, with whom GLASSMAN, Justice, joins, dissenting.

I respectfully dissent. While it is indisputable that Emerson's yard is cluttered with automobiles, lumber, tires, and other items, it is not nearly so certain that his yard is either an "automobile graveyard" or a "junkyard" pursuant to 30–A M.R.S.A. §§ 3752(1) and

---

**3.** Defendant contends that although the District Court's order permits him to retain two unserviceable vehicles, it is impermissibly vague because it does not specify which two unserviceable vehicles can remain. The order was not intended to refer to specific vehicles. Rather, by instructing defendant to remove all but two unserviceable vehicles, the order directs him to bring his property into compliance with the statute, which allows the storage of less than three such vehicles. *See* 30–A M.R.S.A. § 3752(1) (Pamph.1993).

(4) (1993). The statute, certainly as applied to him, is unconstitutionally vague.

The statute offers the landowner no guidance whatsoever in predicting whether his or her unconventional method of personal property storage might also be a statutory violation.

> The power to regulate private property may not be delegated from the legislature to the municipality or from the municipality to a local administrative body without a sufficiently detailed statement of policy to furnish a guide which will enable those to whom the law is to be applied to reasonably determine their rights thereunder, and so that the determination of those rights will not be left to the purely arbitrary discretion of the administrator.

*Cope v. Town of Brunswick,* 464 A.2d 223, 225 (Me.1983) (citation omitted). Nor are the municipal officers in this case provided with any guide other than their aesthetic reaction to the appearance of another's yard. "Without definite standards an ordinance becomes an open door to favoritism and discrimination...." *Waterville Hotel Corp. v. Board of Zoning Appeals,* 241 A.2d 50, 53 (Me.1968).

The citation was based on the personal impressions of three town selectmen who visited Emerson's property and immediately applied the five undefined terms used to describe an automobile graveyard or a junkyard. In the absence of a statutory definition, we often look to a word's dictionary meaning. *See Town of Freeport v. Brickyard Cove Assocs.,* 594 A.2d 556, 558 (Me. 1991). According to *Webster's New Twentieth Century Dictionary* (2d ed. 1974), to abandon means "to forsake entirely"; to discard means "to get rid of as no longer valuable or useful"; and to junk means "to throw away as worthless." Each word is a synonym of the other two. For something to be worn-out, it must be "used until no longer effective, usable, or serviceable." For something to be unserviceable, it must no longer "give good service," or be "beneficial, profitable or helpful."

There is nothing in the record that supports the municipal officers' application of these definitions to Emerson's personal property. Emerson, in fact, testified as to his intended use for each of the items in his yard and that he had not abandoned any of them. With respect to "worn-out," an item may be well past its prime, tattered, or even unfit for its original use and still retain some measurable benefit or use to its owner. He testified that all of his motor vehicles were running, if not registered, and no one disputed that fact. He had some truck bodies which he used for storage. Although the District Court found the motor vehicles to be unserviceable, the record would only support a finding that they were unregistered. Each item, however unsightly, held a use and value for Emerson.

Emerson's predicament calls to mind the sage observation of his putative ancestor that "one man's beauty is another's ugliness." Ralph Waldo Emerson, *Circles* in *Essays: First Series* 247, 259 (1841). What was junk to the selectmen is valuable personal property to Emerson. The statute provides no help in discerning which is which. In the instant case, it created a roving band of aestheticians who found violations based not on any set of objective criteria but rather on arbitrary, personal predilections. *See Chandler v. Town of Pittsfield,* 496 A.2d 1058, 1062 (Me. 1985) ("The legislative body must spell out its policies in sufficient detail to furnish a guide which will enable those to whom the law is to be applied to reasonably determine their rights thereunder....") (quoting *Stucki v. Plavin,* 291 A.2d 508, 510 (Me.1972); *City of Portland v. Jacobsky,* 496 A.2d 646, 649 (Me. 1985) (ordinance is void for vagueness when its language forbids or requires the doing of an act in terms so vague that people of common intelligence must guess at its meaning); *Maine Real Estate Comm'n v. Kelby,* 360 A.2d 528, 531 (Me.1976) (statute "must provide reasonable and intelligible standard to guide the future conduct of individuals"); see also *Wakelin v. Town of Yarmouth,* 523 A.2d 575, 577 (Me.1987); *Cope v. Town of Brunswick,* 464 A.2d 223 (Me.1983)).

If the Town of Pownal wishes to establish a standard for the appearance of residential lawns, it might permissibly do so through a zoning ordinance. It should not attempt to do so, however, through a vague statute whose application in this case is unsupported

by the evidence. For these reasons I would vacate the judgment of the Superior Court.