2009 ME 98

### The PORTLAND COMPANY

v.

### The CITY OF PORTLAND.

Supreme Judicial Court of Maine.

Argued: June 17, 2009.
Decided: Sept. 3, 2009.

Deborah M. Mann, Esq. (orally), Natalie L. Burns, Esq., Jensen Baird Gardner & Henry, Portland, ME, for the City of Portland.

Michael D. Traister, Esq. (orally), Peter S. Plumb, Esq., Murray, Plumb & Murray, Portland, ME, for The Portland Company.

Panel: CLIFFORD, LEVY, SILVER, MEAD, and GORMAN, JJ.

SILVER, J.

[¶ 1] The City of Portland appeals, and the Portland Company cross-appeals, from several judgments of the Superior Court (Cumberland County, *Delahanty, J.),* following trial, on the Portland Company's complaint alleging an unconstitutional taking of its non-fee interest in three parcels of land owned by the City at the time of the taking. We hold that (1) the appeal was timely; (2) the court did not err in holding that the Portland Company had a property interest in these parcels; (3) there is no basis on which to reject the City's finding of exigent circumstances; (4) the takings are for a public use; (5) the court did not err in finding that the Portland Company waived its coercion claim; and (6) the Portland Company is not entitled to attorney fees.

## I. BACKGROUND

[¶ 2] This appeal concerns three contiguous parcels of land, referred to by the parties as A–1, A–2, and A–3, located adjacent to the Ocean Gateway Marine Passenger Terminal at the eastern end of Commercial Street in Portland. The Portland Company asserts an interest, granted to it by deed in 1865, in certain railroad track rights over the three parcels. Pursuant to the 1865 deed, the Atlantic and St. Lawrence Railroad Company and the Grand Trunk Railroad Company granted the Portland Company, which owned adjacent land, the right to connect to railroad tracks over land owned by the Atlantic and St. Lawrence Railroad Company and leased by the Grand Trunk Railroad Company:

The said Grand Trunk Railroad Company also grants to the Portland Company and its assigns the right to maintain a connection from the works of the latter by one or two tracks with tracks of the Railroad Company leading to its station building in such manner as shall be suit-

ed to the convenience of both companies. And said Atlantic Company, if it shall be at any time in possession of the said railroad station grounds and buildings will in like manner grant to the Portland Company and its assigns the right to continue and maintain such connection.

[¶ 3] The Atlantic and St. Lawrence Railroad Company land came to be owned by the Canadian National Railway, which in 1988 brought an action against Phineas Sprague Sr., a successor-in-interest to the Portland Company, for trespass and nuisance. *See Canadian Nat'l Ry. v. Sprague*, 609 A.2d 1175, 1177 (Me.1992). Regarding the track rights at issue here, the referee who reviewed the case issued a report finding that the Portland Company and its successors-in-interest held an easement appurtenant to the land. The referee also found that, although the track rights were in abeyance, they had not been abandoned or extinguished. The Superior Court adopted the referee's report. *Canadian Nat'l Ry. v. Sprague*, CV 88–1420 (Me.Super. Ct., Cum. Cty., June 3, 1991) (Alexander, J.). We affirmed the judgment following Sprague's appeal from issues other than those raised in the present appeal. *Canadian Nat'l Ry.*, 609 A.2d at 1176–79.

[¶ 4] In 1993, the Canadian National Railway transferred the property at issue to the City, with the exception of a small parcel that it had previously transferred to the Portland Water District. In 1996, the Portland Company, whose president and owner is Phineas Sprague Jr., repurchased the land owned by Phineas Sprague Sr.

[¶ 5] In 2002, the City's planning office completed a master plan to develop the eastern waterfront. The master plan focused on the development of the area adjacent to the Ocean Gateway Marine Passenger Terminal. The development at issue on parcels A–1, A–2, and A–3 is outlined

and discussed in the master plan, including the extension of Hancock Street as a city street, the construction of parking garages, and other commercial development.

[¶ 6] In 2003, based on the provisions set forth in the master plan, the City issued a request for proposals for a parking garage and other development on parcel A–2. The development of this garage and other parking garages is part of an overall plan to increase the number of available garage parking spaces near the waterfront. The request for proposals required the developer to commit to a 600–car structured parking facility; to participate in the "Park & Shop" program; to operate with hours compatible with the Casco Bay Island Ferry schedule; to charge not more than 110% of the average rates charged by city-owned parking garages; to be available for snow-ban parking; and to allow for off-hours residential use.

[¶ 7] During 2004 and 2005, the City, seeking to extinguish the Portland Company's track rights, negotiated with the Portland Company for an exchange of the track rights for certain marina rights. They were unable to reach an agreement.

[¶ 8] In April 2005, the City accepted the proposal of Riverwalk, LLC for the development of parcel A–2. Riverwalk's proposal included a multi-story building with a combination of residential and commercial uses on parcel A–2, along with the construction of a parking garage on privately owned land on the opposite side of Fore Street, across from parcel A–2. Shortly after the City accepted Riverwalk's proposal, the Portland Company granted Riverwalk an option to purchase the track rights in an amount to be set by an appraiser, but not to exceed $2,000,000. In June 2005, the City offered $5002 for the release of the track rights, based on an appraisal obtained by the City. The City

stated that it would pursue condemnation if the Portland Company would not agree to a sale, because time was of the essence. The Portland Company declined the City's offer. The Portland Company's appraiser valued the track rights at between $1,900,000 and $2,000,000.

[¶ 9] The City passed an order of condemnation in July 2005 to acquire the Portland Company's track rights and thereby extinguish them. The condemnation order's declaration of purpose states that the track rights are to be taken so that the land "can be used for the construction of a municipal road, to create public parking on a nearby lot and for economic development." The condemnation order's findings state that the "public exigency requires the immediate taking of the property interest" of the Portland Company.

[¶ 10] Parcel A–1 is a newly created city street known as the Hancock Street Extension. The condemnation order findings state that it would not be in the best interest of the public or the City to construct a railroad station on any of the City owned land and that, for safety, the City intends to prohibit rail crossings on the Hancock Street Extension.

[¶ 11] Parcel A–2 has since been transferred from the City to Riverwalk for the development of a condominium, retail space, and public space. The City and Riverwalk entered into a lease agreement for the parking garage pursuant to which the City agreed to rent half of the parking spaces and Riverwalk agreed that at the termination of the lease, residents of islands within the City would be placed at the head of any waiting list for individual monthly parking spaces.

[¶ 12] Parcel A–3 is to be used for economic development as buildings and an additional parking garage. The condemnation order findings further state that the Portland Company's track rights on parcel A–3 make it "impossible to market the City's property for economic development," and that the track rights also impede lending and prevent development. The condemnation order and subsequently issued certificate provide for damages of $5002.

[¶ 13] In July 2005, the Portland Company filed a verified complaint. The Portland Company alleged an unconstitutional taking, challenging the City's findings of public exigency and public use and appealing the City's award of damages. The Portland Company also asserted several other claims, including a claim that the City violated 23 M.R.S. § 154–B (2008)[1] by coercing the Portland Company to accept a less advantageous agreement with Riverwalk than the Portland Company otherwise could have obtained.

[¶ 14] Shortly after the Portland Company filed its complaint, the Portland Company and Riverwalk executed a memorandum of agreement pursuant to which Riverwalk agreed to pay the Portland Company $100,000 for the Portland Company's track rights in parcels A–1 and A–2, provided the City would agree to certain stipulations. In August 2005, the City and the Portland Company entered into a stipulation pursuant to which the City agreed not to use the Portland Company's release of the track rights to Riverwalk as evidence that the track rights are without

---

1. Title 23 M.R.S. § 154–B (2008) states: "In no event shall the [Department of Transportation] either advance the time of condemnation, or defer negotiations or condemnation or take any other action coercive in nature, in order to compel an agreement on the price to be paid for property or property rights." Section 154–B applies to the acquisition of property by municipalities, pursuant to 23 M.R.S. § 3029 (2008).

value, and agreed not to use the agreement between the Portland Company and Riverwalk in defending against the Portland Company's challenge to the legality of the taking. The stipulation also provided that the Portland Company waived "any claim to receive damages or other payment or relief" with respect to parcels A–1 and A–2.

[¶ 15] The court held a three-day jury-waived trial in May 2007. In a judgment entered on September 13, 2007, the court found that the City took the Portland Company's rights in parcels A–1 and A–2 for a public use and demonstrated exigent circumstances. However, the court restored the Portland Company's rights in parcel A–3 because it found that the City did not demonstrate public exigency as to that parcel. In reaching this conclusion, the court found that development of parcel A–3 was not included in the immediate plan for development and that its projected use as a parking facility is not a change from its current use. The court also found that the City had not acted in bad faith with respect to parcel A–3.

[¶ 16] Four additional orders followed. On September 21, 2007, the court granted the Portland Company's cross-motion for summary judgment, holding that res judicata prevents relitigation of the referee's report, the adoption of which was affirmed in *Canadian Nat'l Ry.*, 609 A.2d at 1176, regarding the nature of the Portland Company's property interest. On September 24, 2007, the court granted the City's motion in limine, holding that the Portland Company waived any claims regarding parcels A–1 and A–2 when it entered into the stipulation with the City. In that order, the court also held that the only remaining claim was for damages for the City's temporary taking of parcel A–3. On January 7, 2008, the court approved the parties' joint statement that the only remaining issue

was the Portland Company's request for attorney fees. On November 14, 2008, the court found that the Portland Company was the overall prevailing party, but denied its request for attorney fees. The City appealed, and the Portland Company cross-appealed.

## II. DISCUSSION

### A. Timeliness of the Appeal

[¶ 17] The Portland Company argues that the City's appeal should be dismissed as untimely, pursuant to M.R. Civ. P. 54(b)(2) and M.R.App. P. 2(b)(3), 4(c). M.R. Civ. P. 54(b)(2) states in part:

> In an action in which there is a claim for attorney fees, a judgment entered on all other claims shall be final as to those claims unless the court expressly finds that the claim for attorney fees is integral to the relief sought.

M.R.App. P. 2(b)(3) provides that the time within which an appeal may be taken is twenty-one days after entry of the judgment from which the appeal is taken. M.R.App. P. 4(c) provides that an appeal may be dismissed if an appellant fails to comply with the time limitations set forth in the Rules. The Portland Company argues that the appeal period began to run on January 7, 2008, because that was when the court entered an order approving the parties' joint statement that the only remaining issue was the Portland Company's request for attorney fees.

[¶ 18] We do not interpret M.R. Civ. P. 54(b)(2) to preclude the City's appeal, for two reasons. First, Rule 54(b)(2) provides that a final judgment, for purposes of appeal, is a judgment entered on all claims other than attorney fees, unless attorney fees are integral to the relief sought and the court makes an express finding to that effect. Therefore, a final judgment, pursuant to Rule 54(b)(2), must

address claims other than attorney fees. The judgment entered on January 7, 2008, does not address any claims other than attorney fees; rather, it is a procedural order, entered upon a stipulation, to clarify that the one remaining issue was attorney fees, and to provide that it would be resolved based on the briefs rather than by a trial. That judgment therefore is not "a judgment entered on all other claims," and Rule 54(b)(2) does not apply. We also note that the Portland Company appropriately conceded that the prior judgment, entered on September 24, 2007, was not a final judgment because it states that the Portland Company's damages claim as to parcel A–3 remained to be decided.

[¶ 19] Second, it is clear from the court's November 14, 2008, judgment denying attorney fees that the claim for attorney fees is integral to the relief sought. In the November 14 judgment, the court notes that the Portland Company's claim for attorney fees is based on state and federal statutes, including 23 M.R.S. § 3029 (2008); 23 M.R.S. § 154 (2008); 42 U.S.C.S. § 1988 (2009); and 42 U.S.C.S. § 1983 (2002), and on allegations of tortious conduct and bad faith by the City. The court made the express finding that the City had not acted with egregious or tortious conduct, and ultimately rejected attorney fees on each of the grounds that the Portland Company had asserted. Although the court does not describe the Portland Company's attorney fee claims by using the term "integral to the relief sought," its express finding and its judgment make it clear that the court dealt with those claims as though they were integral. For purposes of M.R. Civ. P. 54(b)(2), the court made the requisite finding that the attorney fee claims were integral, and, for that reason, the prior judgments were not final.

### B. Prior Litigation of the Portland Company's Property Interest

[¶ 20] The City argues that the court erred in holding that the doctrine of res judicata precludes the City from litigating the issue whether the Portland Company has an appurtenant easement or some other interest, or whether the Portland Company's interest has been extinguished. The City argues that the prior litigation does not resolve these issues.

[¶ 21] We review a grant of a summary judgment de novo, considering "the evidence in the light most favorable to the party against whom judgment has been granted to decide whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact." *Brawn v. Oral Surgery Assocs.*, 2003 ME 11, ¶ 15, 819 A.2d 1014, 1022 (quotation marks omitted). "We will affirm a grant of summary judgment if the record reflects that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575.

[¶ 22] We review de novo a determination that res judicata bars a particular litigation. *Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶ 7, 940 A.2d 1097, 1099. Under the doctrine of res judicata, a party and its privies are barred from relitigating claims or issues that have already been decided. *Id.* ¶¶ 7–9, 940 A.2d at 1099–1100. "Issue preclusion, or collateral estoppel, prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." *Id.* ¶ 9, 940 A.2d at 1100 (quotation marks omitted).

[¶ 23] The Portland Company is entitled to a summary judgment as a matter of law on this issue because the prior litigation determined that the Portland Company's predecessor-in-interest had an appurtenant easement that had not been extinguished or abandoned. The court did not err in concluding that the doctrine of res judicata precludes relitigation of that finding. Although the City argues that the extinguishment issue should not be considered barred by res judicata because it was decided only as of the time of the prior litigation, the only relevant event since then is the City's own eminent domain proceeding. The City cannot use its own eminent domain proceeding to argue that the Portland Company has no valid property interest.

## C. The Portland Company's Constitutional Claims

[¶ 24] The City took the track rights pursuant to 23 M.R.S. §§ 3022, 3023 (2008); and 30-A M.R.S. § 3101 (2005);[2] and made findings as to both public exigency and public use. The Maine Constitution, article I, section 21, states: "Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it."

[¶ 25] We review directly the decision of the municipality in this appeal under M.R. Civ. P. 80B. *See Nestle Waters N. Am., Inc. v. Town of Fryeburg*, 2009 ME 30, 32, ¶ 967 A.2d 702, 712. We review a municipality's legislative finding of public exigency solely to determine whether there was abuse of the process by which the finding of public exigency was made:

A taking by eminent domain will not be reversed on appeal absent a showing that the power of eminent domain has been abused. Although a legislative determination that the taking was for a public purpose is a judicially reviewable decision, a finding of public exigency is not reviewable by the courts unless there was no rational basis to support a finding that an exigency existed.

*Fuller v. Town of Searsport*, 543 A.2d 361, 363 (Me.1988) (citation omitted). A finding of public exigency involves a determination that the taking was necessary; the property interest was taken only to the extent necessary; and the property is suitable for the particular public use for which it was taken. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 19, 951 A.2d 821, 826–27. In an eminent domain action, a property owner has no constitutional right to have the question of public exigency judicially reviewed, except to determine whether the governmental authority acted in bad faith or abused its power. *Id.* ¶ 19, 951 A.2d at 827.

[¶ 26] The Portland Company challenges the City's finding of public exigency on three grounds, all of which we reject. The Portland Company's first argument relates to parcels A–1 and A–2. The Portland Company contends that the City abused its condemnation power by unduly pressuring the Portland Company into reaching an agreement with Riverwalk. This allegation, even if proved, would not form a valid basis for a challenge to a finding of public exigency. To pursue a claim for judicial review, the

---

**2.** Title 30-A M.R.S. § 3101 has since been amended. P.L.2005, ch. 642, § 4 (effective Aug. 23, 2006) (codified at 30-A M.R.S. § 3101 (2008)). The City also cited to 30-A M.R.S.A. § 5253 (1996), which was repealed in 2001. P.L.2001, ch. 669, § 2 (effective July 25, 2002) (codified at 30-A M.R.S. §§ 5251–5261 (2008)). The City asserts that the citation to section 5253 was a typographical error, and that the correct citation would have been to 30-A M.R.S. § 5223 (2005). Section 5223 has since been amended. P.L.2007, ch. 413, § 3 (effective Sept. 20, 2007).

property owner must allege an abuse of the process by which the governmental entity determined that a public exigency exists. *Id.* ¶ 19, 951 A.2d at 826–27. The Portland Company makes no such allegation; rather, it alleges that the City abused the process by coercing the Portland Company to reach an agreement with Riverwalk. The Portland Company's coercion claim must be brought, if at all, pursuant to 23 M.R.S. § 154–B, rather than as a challenge to the finding of public exigency.

[¶ 27] The Portland Company's second challenge to the finding of public exigency relates to parcel A–1. The Portland Company argues that the City presented no evidence that it would not be safe to have railroad tracks cross the Hancock Street Extension, and the City did not perform any analysis as to whether there would be safety issues associated with a track crossing over that street. We reject this argument because it relates to the sufficiency of the evidence to support the finding of public exigency; it does not involve an allegation of abuse of the process by which the finding of public exigency was made. We do not review public exigency findings for sufficiency of the evidence. *See Dyer,* 2008 ME 106, ¶ 19, 951 A.2d at 826–27.

[¶ 28] The Portland Company's third challenge to the finding of public exigency relates to parcel A–3. The Portland Company argues that there is no public exigency with respect to that parcel because the City has no specific project planned for it, and because the City admitted that parcel A–3 would continue to be used for surface parking. We reject these arguments because they do not amount to an allegation of abuse, and therefore the Portland Company is not entitled to judicial review of the finding of public exigency with respect to parcel A–3. *See id.*

[¶ 29] We turn next to the Portland Company's challenge to the finding that all three parcels were taken for a public use. We review de novo the determination whether the use for which a taking is authorized is public or private, and we review for clear error the factual findings on which the determination is based. *Blanchard v. Dep't of Transp.,* 2002 ME 96, ¶ 26, 798 A.2d 1119, 1126. "As a general rule, property is devoted to a public use only when the general public, or some portion of it (as opposed to particular individuals), in its organized capacity and upon occasion to do so, has a right to demand and share in the use." *Id.,* 2002 ME 96, ¶ 29, 798 A.2d at 1126. To pass constitutional muster, the use for which the property is taken must at the time of the taking be a public use, "not only in a theoretical aspect, but rather in actuality, practicality and effectiveness, under circumstances required by public exigency." *Brown v. Warchalowski,* 471 A.2d 1026, 1029–30 (Me.1984). The public must have the right to use the property without relying on the "grace of any private party." *Blanchard,* 2002 ME 96, ¶ 29, 798 A.2d at 1126.

[¶ 30] The Portland Company's track rights were taken so that they could be extinguished in furtherance of a single, integrated plan for the development of transportation infrastructure and economic development near the Ocean Gateway Marine Passenger Terminal. Significant portions of the planned development are for public access and use, including a public street, a parking garage, and other public space. Although the dominant purpose of a taking must be for a public use, a taking is not unconstitutional on the sole basis that a private party will also benefit from the taking. *See Crommett v. City of Portland,* 150 Me. 217, 236, 107 A.2d 841, 852 (1954). We have upheld a taking when

use was not equal for all members of the public. *Blanchard*, 2002 ME 96, ¶ 33, 798 A.2d at 1127. The Portland Company's interest in all three parcels was taken for a public use, in spite of the benefit to Riverwalk.

### D. The Portland Company's Coercion Claim

[¶ 31] The Portland Company argues that the court erred in determining that the Portland Company, through its stipulation with the City, waived its claim that the City engaged in illegal coercion, in violation of 23 M.R.S. § 154–B, as to parcels A–1 and A–2. The Portland Company argues that the stipulation explicitly preserves the company's right to challenge the legality of the taking, and that it may do so pursuant to section 154–B. We review the interpretation of a contract de novo. *Cheung v. Wu*, 2007 ME 22, ¶ 24, 919 A.2d 619, 624. By entering into the stipulation, the Portland Company agreed to relinquish all rights to "damages or other payment or relief." The Portland Company therefore unambiguously waived its right to seek any relief pursuant to section 154–B with respect to parcels A–1 and A–2.

### E. Attorney Fees and Costs

[¶ 32] We review the denial of attorney fees for an abuse of discretion. *Wandishin v. Wandishin*, 2009 ME 73, ¶ 16, 976 A.2d 949, 953; *Ellis v. Ellis*, 2008 ME 191, ¶ 26, 962 A.2d 328, 335. The Portland Company argues that it is entitled to attorney fees pursuant to 23 M.R. § S. 154; 23 M.R.S. § 3029; and 42 U.S.C.S. § 1988. It also asserts several non-statutory bases for an award of attorney fees. The court did not abuse its discretion in denying attorney fees. We review the court's determination of the prevailing party, for purposes of determining costs, for clear error. *Runnells v. Quinn*, 2006 ME 7, ¶ 15, 890 A.2d 713, 717. Because we hold that all three parcels were condemned based on a public exigency and for a public purpose, and the Portland Company is not otherwise entitled to relief, the Portland Company is not the prevailing party and is not entitled to costs.

The entry is:

Judgment entered on September 13, 2007, vacated as to parcel A–3 and remanded for entry of judgment affirming the City's condemnation of parcel A–3. In all other respects, judgment dated September 13, 2007, affirmed. Remaining orders affirmed. Remanded for further action consistent with this opinion.