2010 ME 42

**Donald B. GODSOE**

v.

**Elizabeth A. GODSOE et al.**

Supreme Judicial Court of Maine.

Argued: Feb. 9, 2010.
Decided: May 18, 2010.

Scott Giese, Esq. (orally), Law Office of Scott Giese, Biddeford, ME, Attorney for Donald B. Godsoe.

Jonathan M. Davis, Esq. (orally), Powers & French, P.A., Freeport, ME, Attorney for Peter Wiers.

Robert L. Guillory, Esq. (orally), Shankman & Associates, Lewiston, ME, Attorney for Elizabeth Godsoe.

Janet T. Mills, Attorney General, Carlos Diaz, Asst. Atty. Gen. (orally), Maine Office of Attorney General, Portland, ME, Attorneys for amicus curiae Maine Department of Health and Human Services.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶ 1] Donald B. Godsoe appeals from separate summary judgments entered in the District Court (Lewiston, *Beliveau, J.*) in favor of Elizabeth Godsoe and Peter Wiers. Donald argues that the court erred in granting Elizabeth's and Wiers's motions for summary judgment on the grounds of: (1) res judicata because a triable issue of fact remained as to whether Elizabeth and Wiers committed fraud concerning the paternity of Elizabeth's son; and (2) collateral estoppel because the court's decision, concluding that Donald's action against Elizabeth and Wiers was barred, constituted gender discrimination in violation of the Equal Protection Clauses of the United States and Maine Constitutions. We affirm the judgments.

## I. CASE HISTORY

[¶ 2] The following facts are derived from final judgments from prior proceedings related to this matter and the statements of material facts filed in support of and in opposition to the motions for summary judgment.

[¶ 3] Donald and Elizabeth were married on December 19, 1998. Several months before the marriage, Elizabeth had engaged in intimate relationships with both Donald and Wiers. Elizabeth gave birth to a son on May 21, 1999. Donald has asserted as fact that, when Elizabeth discovered she was pregnant, his mother was suspicious that Donald was not the child's father but that, when questioned, Elizabeth was adamant that Donald was the father.[1] During the marriage, Donald accepted his legal rights and responsibilities as the child's legal father.

---

1. Donald supports this statement of fact with only his affidavit, which, pursuant to MR. Civ. P. 56(e), must set forth facts that are within the affiant's personal knowledge and that would be admissible in evidence. While appearing to be hearsay, the statement is arguably non-hearsay because it goes not to the truth of the matter asserted, but to Donald's state of mind, i.e., whether, at the time of the pregnancy, Donald was on notice that he might not be the father of the child or was convinced by Elizabeth that he was. *See* M.R. Evid. 801(c).

A. The Prior Judgments

[¶ 4] Donald and Elizabeth were divorced pursuant to an uncontested divorce judgment dated February 1, 2005, entered by a family law magistrate (*Oram, M.*).[2] The uncontested divorce judgment found that Donald and Elizabeth are the parents of the child and established parental rights and responsibilities for the child.

[¶ 5] In May 2007, more than two years after the divorce judgment was entered, Donald filed motions to establish paternity and for relief from the divorce judgment pursuant to M.R. Civ. P. 60(b), seeking to vacate the finding by the divorce court that established his status as the legal father of the child. In response, Elizabeth filed motions to modify and enforce the child support provisions of the divorce judgment. Although believing Wiers to be the father of the child, Donald made no effort to initiate a paternity action against Wiers or otherwise join him in the proceedings pursuant to M.R. Civ. P. 20 (permitting permissive joinder of persons with interest in the proceedings) or M.R. Civ. P. 42 (permitting consolidation of actions with common questions of fact). Accordingly, Wiers was not a party to the proceedings on the 2007 motions.

[¶ 6] In January 2008, after a testimonial hearing, the court (*Cote, J.*) entered a judgment denying Donald's motions to establish paternity and for relief from the divorce judgment. The motion court found that, "[i]n the months prior to" Elizabeth and Donald's engagement, Elizabeth had a sexual relationship with Wiers. The court found that "it is clear that, at the time [Elizabeth] found out she was pregnant, [she] was well aware of the possibili-ty that [Donald] was not the father, but fervently hoped that he was." Elizabeth had testified that she wanted no contact or involvement with Wiers. The court further found "it highly probable that [Donald] had at least an inkling, and more than likely had a suspicion, he was not [the child's] biological parent at all relevant times: when he became engaged to [Elizabeth], when he married [Elizabeth], when [the child] was born, and when the parties divorced."

[¶ 7] The motion court noted in its judgment that a motion for relief from judgment brought pursuant to M.R. Civ. P. 60(b)(1), (2), or (3) on the grounds of mistake, excusable neglect, newly discovered evidence, fraud, misrepresentation, or misconduct by an adverse party must be brought within one year of the judgment. The court concluded that although Donald had argued that his motion should be considered under the "catch-all" basis permitted by M.R. Civ. P. 60(b)(6), the basis for Donald's motion would be "more appropriately raised by a motion filed pursuant to various grounds allowed by Rule 60(b)(1)-(3)," and, therefore, determined that the motion was time-barred. The court also concluded that, even assuming that Donald was not the child's biological father, Donald had failed to show that allowing him to proceed on his motion to establish paternity and for relief from judgment would, at that time, serve the child's best interests. On the contrary, the court found that granting Donald relief from the determination that he is the child's father would have an impact on the child in a negative way.

[¶ 8] In March 2008, the court (*Oram, M.*) granted Elizabeth's motions to modify

**2.** At the time of the divorce, the present family law magistrates were called case management officers. *See* P.L. 2005, ch. 384 (effective Sept. 17, 2005). Then and now, but for a pilot project newly in effect, family law magis-trates are authorized to hear final divorce actions and issue divorce judgments only when the proceeding is uncontested. M.R. Civ. P. 110A(a); former M.R. Fam. Div. I.C. (abrogated effective Jan. 1, 2009).

and enforce, found an arrearage of unpaid child support, and ordered a change in Donald's child support obligation.

[¶ 9] Donald timely appealed the court's denial of his motions to establish paternity and for relief from judgment. We affirmed in a memorandum of decision, Mem 08–130, dated July 10, 2008.

### B. The Judgment on Appeal

[¶ 10] On November 26, 2008, Donald filed a new action against Elizabeth and Wiers, seeking: (1) an order that Wiers and the child undergo genetic testing, pursuant to 19–A M.R.S. § 1558 (2009), to determine the child's paternity; (2) a finding, pursuant to 19–A M.R.S. § 1561 (2009), that Wiers, and not Donald, is the child's biological father; (3) relief, pursuant to M.R. Civ. P. 60(b), from the parental rights and responsibilities portion of the divorce judgment and from the denial of his previous motions to establish paternity and for relief from judgment; and (4) an order establishing the parental rights and responsibilities of himself, Elizabeth, and Wiers.

[¶ 11] Wiers and Elizabeth raised affirmative defenses in their answers and moved to dismiss Donald's petition. Later, each filed a motion for summary judgment. Donald filed a combined opposition to the motions for summary judgment and filed a statement of additional material facts, including his allegation that Wiers may be the child's father.

[¶ 12] In April 2009, the court (*Beliveau, J.*) granted, in two separate orders, Elizabeth's and Wiers's motions for summary judgment. In its order granting Wiers's motion, the court held that Donald was barred under the doctrines of res judicata and collateral estoppel from attempting to relitigate the court's prior determination that he is the child's legal father, even if the court were to construe his petition as seeking a different remedy from that previously sought. The court concluded that, having fully litigated the issue of his status as the child's legal father, Donald could not seek to revisit the issue under the guise of a petition, pursuant to 19–A M.R.S. § 1553 (2009), to establish paternity and determine parental rights and responsibilities. The court awarded Wiers $500 toward his attorney fees.

[¶ 13] With respect to Elizabeth's motion, the court determined that no issues of material fact were in dispute and that "[t]his matter should be resolved by resorting to the doctrine of *res judicata.*" Accordingly, the court granted Elizabeth's motion for summary judgment and awarded her $500 toward her attorney fees.

[¶ 14] Donald filed this appeal.

## II. LEGAL ANALYSIS

### A. Standard of Review; Res Judicata

[¶ 15] We review a grant of a summary judgment on a res judicata issue de novo, viewing the record "in the light most favorable to the party against whom judgment has been granted to decide whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact." *Portland Co. v. City of Portland,* 2009 ME 98, ¶¶ 21–22, 979 A.2d 1279, 1287 (quotation marks omitted). "Under the doctrine of res judicata, a party and its privies are barred from relitigating claims or issues that have already been decided." *Id.* ¶ 22, 979 A.2d at 1287.

### B. Res Judicata as to Elizabeth Godsoe

[¶ 16] The doctrine of res judicata applies to parentage determinations made in divorce or parental rights judgments, whether contested or not. *See Stit-*

*ham v. Henderson*, 2001 ME 52, ¶¶ 6–9, 768 A.2d 598, 600–01;[3] *see also Dep't of Human Servs. v. Lowatchie*, 569 A.2d 197, 200 (Me.1990). After the expiration of the time for appeal, relief from such judgments "may be obtained only under the provisions of M.R. Civ. P. 60(b)." *Lowatchie*, 569 A.2d at 200. The available Rule 60(b) remedies provide adequate opportunities for relief from parentage determinations resulting from fraud, mistake, or other conduct that would make the original adjudication unjust, while generally preserving the finality of parentage determinations that is important for the parents, the child, and society.[4]

[¶ 17] Donald tried and failed to obtain Rule 60(b) relief from the parentage determination in his uncontested divorce from Elizabeth. We affirmed the judgment entered in the Rule 60(b) proceeding. The District Court properly determined that res judicata precludes Donald from relitigating the parentage issue with Elizabeth for a third time.

## C. Collateral Estoppel as to Peter Wiers

 [¶ 18] Although Wiers was not a party to the divorce or the subsequent Rule 60(b) proceeding, he asserts that the collateral estoppel component of the res judicata doctrine bars Donald's action against him. Collateral estoppel, or issue preclusion, "prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." *Portland Co.*, 2009 ME 98, ¶ 22, 979 A.2d at 1287 (quotation marks omitted).

 [¶ 19] A party to a current proceeding may assert collateral estoppel defensively to bar the opposing party from relitigating factual issues resolved against it in a prior proceeding and which were

---

3. In *Stitham*, we observed that the doctrine of res judicata applies to parentage determinations in uncontested divorce proceedings:

 We have said that res judicata bars relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action.

 *Stitham v. Henderson*, 2001 ME 52, ¶¶ 6, 9, 768 A.2d 598, 600–01 (quotation marks omitted) (holding that res judicata did not bar relitigation of paternity, but only because the plaintiff had not been a party to, or in privity with a party to, the uncontested divorce judgment).

4. M.R. Civ. P. 60(b) provides, in relevant part:

 (b) **Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.... [T]he procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

decided by a prior final judgment, even though the party asserting collateral estoppel was not a party to the prior proceeding. *See Brewer v. Hagemann*, 2001 ME 27, ¶ 8, 771 A.2d 1030, 1033 (holding that the defendant, though not a party to the prior litigation, could assert collateral estoppel defensively to preclude the plaintiff from relitigating factual issues that the plaintiff had previously litigated and lost); *Hossler v. Barry*, 403 A.2d 762, 768 (Me. 1979). A party may be collaterally estopped from relitigating a factual issue even if the two proceedings offer substantially different remedies or the second proceeding is based on a different claim than the first. *Macomber v. MacQuinn–Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131, 139; *Button v. Peoples Heritage Sav. Bank*, 666 A.2d 120, 122 (Me.1995).

[¶ 20] As discussed in the case history above, Donald had notice and a fair opportunity to address Wiers's paternity in or concurrently with the Rule 60(b) proceeding. He could have sought to join Wiers as a necessary party at the time he sought Rule 60(b) relief pursuant to M.R. Civ. P. 20, or he could have initiated a separate paternity action against Wiers and moved to consolidate the two proceedings pursuant to M.R. Civ. P. 42.[5]

[¶ 21] A father who seeks Rule 60(b) relief from an original parentage determination made in a divorce judgment cannot split his claim of non-paternity by having the question decided first in the Rule 60(b) proceeding, and if unsuccessful, instituting a subsequent, independent paternity action.[6] Having been on notice that he may not be the father of the child from the time of the marriage forward and having had the opportunity to challenge the paternity determination made in the divorce judgment in the course of the Rule 60(b) proceeding, Donald is collaterally estopped from joining Wiers in this new action to relitigate the already determined parentage issue.

[¶ 22] In *Stitham*, 2001 ME 52, ¶¶ 6–12, 768 A.2d at 600–02, *Department of Human Services v. Richardson*, 621 A.2d 855, 856–58 (Me.1993), and *Atkinson v. Hall*, 556 A.2d 651 n. 1 (Me.1989), we addressed circumstances in which a paternity determination made in a judgment that has become final may be reopened for certain purposes, particularly when requested by third parties. None of those

---

5. At the time of Donald's petition in 2007, the governing rules of procedure were M.R. Civ. P. 20 and M.R. Civ. P. 42. Joinder of necessary parties, related family matters, and the consolidation of related actions remain available under the current rules. *See* M.R. Civ. P. 111(a)(1) (permitting the joinder of actions "that could be brought as a separate Family Division action"); M.R. Civ. P. 111(a)(2) (permitting the joinder of persons "specifically authorized to file or participate in a Family Division action"); M.R. Civ. P. 111(b) (permitting consolidation of related family matters pursuant to M.R. Civ. P. 42).

6. The Uniform Act on Paternity states, in pertinent part: "Paternity may be determined upon the complaint of the mother, the alleged father, the child or the public authority chargeable by law with the support of the child." 19–A M.R.S. § 1553 (2009). We need not decide Donald's claim that if the Uniform Act on Paternity would bar an action by him against Wiers, but would permit an action by Elizabeth as "the mother," the Act violates the constitutional guarantee of equal protection. Because Elizabeth has not brought a paternity action against Wiers either in her own name or on behalf of her son, no "as applied" equal protection violation has been shown. Even if we were to conclude that a mother is not barred, the statute is not necessarily invalid because, as Wiers suggests, we might construe "mother" to mean "custodial parent," or "alleged father" to include a person claiming not to be the father, so as to avoid reaching the constitutional issue. *See Bates v. Dep't of Behavioral & Developmental Servs.*, 2004 ME 154, ¶ 85, 863 A.2d 890, 911–12.

circumstances are present here, and our statements in those opinions are not implicated by today's opinion.

The entry is:

Judgments affirmed. No costs to any party.