MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2018 ME 28
Docket:       Was-17-258
Argued:       December 14, 2017
Decided:      February 27, 2018

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

BAYBERRY COVE CHILDREN'S LAND TRUST

v.

TOWN OF STEUBEN et al.[1]

HJELM, J.

[¶1]  Bayberry Cove Children's Land Trust appeals from a judgment of the Superior Court (Washington County, *Stewart, J.*) affirming the Town of Steuben's taking of an interest in Rogers Point Road by eminent domain pursuant to 23 M.R.S. § 3023 (2017).[2]  Contrary to the Trust's contentions, the

---

[1]  Brian H. Jaffe, Trustee of the Irving Jaffe Living Trust, and Leon Sherwood and Jane Sherwood are parties-in-interest to this appeal.  Jaffee has not participated in this appeal, and the Sherwoods join in the Town's arguments.

[2]  Both in its brief and at oral argument, the Town explicitly asserted that the taking is only of an easement interest in the road.  Further, some of the documents and notices—including some quoted in this opinion—that were issued by the Town and resulted in the taking specified that the Town intended to take only an easement interest.  Despite having had the opportunity to do so, the Trust has not disputed or otherwise challenged this assertion.  Nonetheless, some of the documents issued by the Town did not describe the nature of the interest being taken, and statutes applicable to the taking, *see* 23 M.R.S. §§ 3021-3023 (2017), bear on that question.  Because the parties have not argued this aspect of the taking, we need not and do not address it here but rather refer to the nature of the taken interest only in generic terms.

taking is constitutional because it arose from a public exigency and is for public use. We therefore affirm the judgment.

## I. BACKGROUND

[¶2] The following facts are undisputed and are taken from the administrative record, s*ee Portland Co. v. City of Portland*, 2009 ME 98, ¶ 25, 979 A.2d 1279 (stating that in an eminent domain proceeding, we review a municipality's decision directly).

[¶3] The road at issue, Rogers Point Road, also known as Wharfs Road, is located in the Town of Steuben. A portion of the road's present location is on or within land owned in fee simple by the Trust. The history of the road dates back to the nineteenth century. In 1825, the Town accepted the road, which then was 770 rods long and three rods wide. Sixty years later, in 1885, the Town issued a notice that the municipal officers intended to extend the road, and in 1887, the road was extended by approximately 262 rods for the "use of said town" and ended "at the Island." As with the original part of the road, the extension was three rods wide. In 1944, a portion of the road was washed out, prompting the Town, the following year, to lay out a new section of the road, in order to bypass the damaged portion, from "a point in the center of the old road

. . . to the bar that goes to [the] Island," a distance of "800 feet long and 20 feet wide."

[¶4] In 2013, the Town commissioned a survey of the road's boundaries. The survey revealed that "a small portion of the existing traveled way for Rogers Point Road stray[ed] outside the bounds of the right of way as laid out by the Town in 1825, 1887 and 1944[.]" In 2015, the Trust filed a declaratory judgment action against the Town to establish the legal status, including title, to the portion of the road laid out on its property.

[¶5] In April of 2016, while the declaratory judgment action was pending, the Town issued a warrant for a special town meeting that presented, in relevant part, two alternative articles for the Town's residents' consideration. One article would authorize the Town to settle the declaratory judgment action by discontinuing the road in exchange for $150,000 to be paid by the Trust. The second article would authorize a taking of an interest in the road by eminent domain, pursuant to 23 M.R.S. § 3023,[3] "in order to confirm that the boundaries of the Town's right-of-way for that town way are coincident

---

[3] Section 3023 provides, in relevant part, that "[a] municipality may take property . . . for highway purposes if the municipal officers determine that public exigency requires the immediate taking of such property interests, or if the municipality is unable to purchase it at what the municipal officers deem reasonable valuation, or if title is defective." 23 M.R.S. § 3023.

4

with the existing traveled way," which terminates at the end of a point of land that is surrounded by a saltwater bay.

[¶6] At the resulting town meeting held in May of 2016, voters rejected the settlement option and instead authorized the Town to take, by eminent domain, the traveled part of the road. Having been given the voters' approval, in August of 2016 the Town Selectmen issued a notice of an intent to take an interest in the road by eminent domain. That same month, the Town also commissioned a second boundary survey to depict the "right of way layout" of the road. After a second public hearing, held on August 31, 2016, the Selectmen signed an Order of Condemnation, ordering the taking of an interest in approximately 4,000 square feet of private property to "confirm" the road's boundaries, based on public exigency or, alternatively, defective title to the road. Of the total area taken by the Town, 2,470 square feet are located on the Trust's land, and the remainder is located on an abutting parcel owned by the Sherwoods, *see supra* n.1. The Selectmen also directed that $1,020.60 would be paid to the Trust as just compensation for the taking. The Certificate of Taking, Affidavit of Title, and Order of Condemnation were timely filed and recorded with the Washington County Registry of Deeds. *See* 23 M.R.S. § 3024 (2017).

[¶7]    Pursuant to M.R. Civ. P. 80B, the Trust filed a complaint, subsequently amended, in the Superior Court, alleging that the Town's taking of an interest in the road was unconstitutional.  The court affirmed the Town's decision, and the Trust timely appealed to us.[4]  *See* 23 M.R.S. § 3029 (2017); M.R. Civ. P. 80B(n); M.R. App. P. 2(b)(3) (Tower 2016).[5]

## II.  DISCUSSION

[¶8]  The Maine Constitution provides, "Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it."  Me. Const. art. 1, § 21; *see also* U.S. Const. amend V ("nor shall private property be taken for public use, without just compensation."). Therefore, in order to "avoid a constitutional violation, the establishment of any

---

[4]  The judgment before us, which affirms the taking, is a final judgment even though it does not encompass the question of the amount of damages to be paid to the Trust.  The procedure governing a taking by eminent domain itself is prescribed in 23 M.R.S. § 3023, which permits judicial review of a taking in a proceeding that is separate from and independent of any challenge to damages occasioned by the taking.  In contrast, proceedings relating to damages, including any appeal of a determination of damages, are governed by 23 M.R.S. § 3029 (2017), which provides, "Any person aggrieved *by the determination of the damages awarded* to owners of property or interests therein under this chapter may, within 60 days after the day of taking, appeal to the Superior Court in the county where the property lies*.*"  (Emphasis added.)  On an appeal to the Superior Court from a damages award, a jury or, with the parties' consent, the court then determines damages. *Id.* Because the Legislature has created two distinct procedural mechanisms triggered by a taking—one that concerns the taking itself, and the other limited to resulting damages—the former is justiciable on its own. *See Frustaci v. City of S. Portland*, 2005 ME 101, ¶ 12, 879 A.2d 1001 (stating that "causes of action for constitutional takings, including . . . a municipality's exercise of eminent domain, may be brought directly and independently of section 3029.").

[5]  The restyled Maine Rules of Appellate Procedure do not apply because this appeal was filed prior to September 1, 2017.  *See* M.R. App. P. 1 (restyled Rules).

6

road or way [by eminent domain] . . . must be for a public use and its requirement must be in response to public exigencies." *Brown v. Warchalowski*, 471 A.2d 1026, 1029 (Me. 1984); *see also* 23 M.R.S. § 3023. The Trust challenges the Town's determinations that the taking was supported by a public exigency and that the use of the road is public. We address the Trust's challenges in turn.

A.      Public Exigency

[¶9]  In addressing a challenge to a public taking, we review directly the municipality's decision for a rational basis to support the finding of public exigency. *See Portland Co.*, 2009 ME 98, ¶ 25, 979 A.2d 1279. Three subsidiary findings are necessary to support a finding of a public exigency: "the taking was necessary; the property interest was taken only to the extent necessary; and the property is suitable for the particular public use for which it was taken." *Id.*

[¶10]  Regarding the first of these elements that bear on the existence of a public exigency, we engage in only a limited review of a municipality's determination that a taking is necessary; we look to whether the taking "'was made in bad faith or through an abuse of power.'" *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 19, 951 A.2d 821 (quoting *Finks v. Maine State Highway Comm'n*, 328 A.2d 791, 797 (Me. 1974)). "An abuse of power occurs when the

agency uses its power in an extravagant manner, employs it contrary to the law of its use, or uses it improperly and to excess." *Dyer*, 2008 ME 106, ¶ 19, 951 A.2d 821.

[¶11]  Here, the Town initiated the eminent domain process in response to legal challenges commenced by the Trust concerning the use and ownership of the road.  Additionally, the road's physical location had changed from the boundaries as laid out in 1825 because of the 1887 extension and the 1944 wash-out.  The resulting deviation between the record boundaries and a small portion of the physical location of the traveled area of the road was revealed by the 2013 survey.  These circumstances reasonably prompted the Town to lay out new boundaries for a relatively small portion of the road.  As a result of the historical changes affecting the road, and consistent with a municipality's authorization to take property for "highway purposes," which includes the "alignment" of town ways, *see* 23 M.R.S. § 3021(1) (2017), the Town decided to align the road's record boundaries with its actual location on the face of the earth.

[¶12]  Also, prior to the taking, the Town issued a public notice of a town meeting to address two articles related to the road.  At the public meeting, residents overwhelmingly approved the proposed article that authorized Town

8

officials to take an interest in the land consisting of the traveled part of the road that was outside of the road's record description.

[¶13]   Therefore, the reasons for the taking and the governmental process that led to it demonstrate that the Town neither acted in bad faith nor abused its power in making the necessity determination.

[¶14]   Second, the Trust has not made any argument that the taking exceeded what was necessary to align the record description of the road with the road's physical location, as is shown by the record description of the taking being confined to the traveled area of the road.   As stated in the Order of Condemnation, the existing road "strays outside the bounds of the right of way as laid out by the Town in 1825, 1887 and 1944[.]"   This assertion is supported by the historical documents from 1825, 1887, and 1945, and by the boundary surveys conducted in 2013 and 2016.   Therefore, the taking satisfied the second element of the public exigency analysis because the Town took an interest in only that portion of the Trust's property—approximately 2,470 square feet— that was needed to accomplish the purpose of the taking.   *See* 23 M.R.S. § 3021(1).

[¶15]   Third and finally, the record demonstrates that the property at issue is suitable for current use as a public way, as shown by evidence

demonstrating that the road was established as a public town way and remains a town way used by the public today.

[¶16]  Because the record supports each element of the public exigency framework, there is a rational basis in the record to support the Town's finding of a public exigency.  *See Portland Co.*, 2009 ME 98, ¶ 25, 979 A.2d 1279.  We now turn to the second question, namely, whether the taking is also supported by the Town's determination that the taking is for a public use.

B.    Public Use

[¶17]  Appellate review of a taking of private property for public use presents a mixed question of law and fact.  We consider "de novo the determination whether the use for which a taking is authorized is public or private, and we review for clear error the factual findings on which the determination is based."  *Portland Co.*, 2009 ME 98, ¶ 29, 979 A.2d 1279.  A finding is clearly erroneous when there is no competent evidence to support that finding. *See Sturtevant v. Town of Winthrop*, 1999 ME 84, ¶ 9, 732 A.2d 264.

[¶18]  "As a general rule, property is devoted to a public use only when the general public, or some portion of it (as opposed to particular individuals), in its organized capacity and upon occasion to do so, has a right to demand and share in the use."  *Blanchard v. Dep't of Transp.*, 2002 ME 96, ¶ 29, 798 A.2d

1119. The use at the time of the taking must be public, "not only in a theoretical aspect, but rather in actuality, practicality and effectiveness, under circumstances required by public exigency." *Brown*, 471 A.2d at 1030. The public must "be served by the use as a matter of right, not as a matter of grace of any private party." *Blanchard*, 2002 ME 96, ¶ 29, 798 A.2d 1119. Ultimately, the "distinction between a public and a private use to a large extent depends on the facts of each case." *Id.*

[¶19] A "taking of property for a highway is a taking for public use [that] has been universally recognized, from time immemorial." *Rindge Co. v. Cty. of Los Angeles*, 262 U.S. 700, 706 (1923). Indeed, in enacting section 3023, the Legislature has authorized municipalities to exercise their eminent domain powers for "highway purposes," which means

> *use as a town way and those things incidental to the laying out*, construction, improvement, maintenance, change of location, *alignment and drainage of town ways*, including the securing of materials therefor; provision for the health, welfare and safety of the public using town ways; provision for parking places, rest areas and preservation of scenic beauty along town ways.

23 M.R.S. § 3021(1) (emphasis added). A "town way" is defined, in relevant part, as "[a]n area or strip of land designated and held by a municipality for the passage and use of the general public by motor vehicle." 23 M.R.S. § 3021(3) (2017).

[¶20]  Here, evidence in the record reveals that the public has used the road for nearly 190 years and that the Town has maintained it.  Indeed, the Trust itself acknowledges that "the alleged public way laid out by the Town of Steuben is a public road, only in the sense that it was laid out by a municipality and the public has the legal right to access it."  The purpose of the taking was to establish that the road over which the public has the right to travel is within the record boundaries of what the Trust itself describes as the public's "legal right of access."  In this way, the evidence in the record, confirmed by the Trust's characterization of the public's right to use the road, definitively establishes that the interest in the road was taken for a public use.[6]

[¶21]  The Trust also asserts that the road is not public because it is functionally a "private driveway" servicing the Sherwood property.  The existence of a public use, however, is not defeated "on the sole basis that a private party will also benefit from the taking."  *Portland Co.*, 2009 ME 98, ¶ 30, 979 A.2d 1279.  "'The test of a public use is not the frequency of the use, or the

---

[6]  The Trust contends—despite its recognition that the public has an existing right of access over the road—that the road is not public because it does not lead to a destination where the members of the public are entitled to go.  The terminus of the road, however, is a bar at the end of a point of land owned by the Sherwoods.  As the Town's Order of Condemnation recites, the general public uses the road to get to the intertidal area located on the Sherwoods' land.  The nature and extent of the public's use of the road for this particular purpose does not determine the outcome of this appeal because the public nature of the way itself, which is acknowledged by the Trust, allows members of the public to travel—for its own sake—over the road, irrespective of what those people are entitled to do beyond the end of the road.

number using the way, but its use by people who are not separable from the public generally.'" *Eaton v. Town of Wells*, 2000 ME 176, ¶ 32, 760 A.2d 232 (quoting *S.D. Warren Co. v. Vernon*, 1997 ME 161, ¶ 16, 697 A.2d 1280). Therefore, any ancillary benefit the Sherwoods may derive from the taking does not undermine the concurrent public nature of the road's use.

C.    Conclusion

[¶22]  Because the record supports the Town's determinations that there is both a public exigency and public use to support the taking of an interest in portions of Rogers Point Road by eminent domain, the taking does not suffer from constitutional infirmity.

The entry is:

Judgment affirmed.

Eric N. Columber, Esq. (orally), Acadia Law Group, LLC, Ellsworth, for appellant Bayberry Cove Children's Land Trust

Mark A. Bower, Esq. (orally), Jensen Baird Gardner & Henry, Portland, for appellee Town of Steuben

Diane S. O'Connell, Esq., Patterson & O'Connell, LLC, Ellsworth, for appellees Leon F. Sherwood and Jane B. Sherwood

Washington County Superior Court docket number AP-2016-7
FOR CLERK REFERENCE ONLY