MAINE SUPREME JUDICIAL COURT                        Reporter of Decisions
Decision:      2016 ME 14
Docket:        Som-14-374
Argued:        October 7, 2015
Decided:       January 19, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, <u>MEAD</u>, GORMAN, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

HARVEY AUSTIN JR.

MEAD, J.

[¶1]  Harvey Austin Jr. appeals from a judgment of conviction of abuse of property for failing to label an observation stand (Class E), 12 M.R.S. § 10652(1)(B)(2) (2014), entered in the trial court (Somerset County, *Mullen, J.*) following a bench trial.  Austin contends that when he purchased his hunting license he was given a magazine summarizing Maine hunting laws and rules, endorsed by the Maine Department of Inland Fisheries and Wildlife (IF&W), that misstated the law concerning tree stands, and for that reason the State was equitably estopped from prosecuting him.[1]  We affirm the judgment.

---

[1]  Austin also contends that his conviction violated his constitutional right to due process, and that he proved the affirmative defense of ignorance or mistake provided by 17-A M.R.S. § 36(4)(B)(4) (2014). Because we reject his foundational assertion that the IF&W publication misstated the law, we do not discuss those arguments further.

## I. BACKGROUND

[¶2] On January 21, 2014, two Maine game wardens summonsed Austin for failing to label a tree stand pursuant to 12 M.R.S. § 10652(1)(B)(2), which provides:

A person may not while hunting any wild animal or wild bird:

. . . .

(2) Except as provided in this paragraph, erect or use either a portable or permanent ladder or observation stand on the land of another person unless:

> (a) That person has obtained oral or written authorization to erect and use a ladder or observation stand from the landowner or the landowner's representative; and

> (b) The ladder or observation stand is plainly labeled with a 2-inch by 4-inch tag identifying the name and address of the person or persons authorized by the landowner to use the stand or observation ladder.

[¶3] The matter went to a bench trial on August 28, 2014. At trial, the State presented testimony from the wardens that in early November 2013, they investigated a tip they had received from Operation Game Thief concerning a deer stand and bait pile. They discovered what one of them described as a "fully erected," "definitely finished" dual-seat tree stand lashed to a tree, some camouflage netting on the stand, a bait pile consisting of apples and corn kernels, and a game camera overlooking the pile. In defending the charge at trial, Austin

admitted that the tree stand was not labeled, but he told the court the same thing he had told the wardens during their investigation—that he had not finished the stand and had "never used [it] for a split second."

[¶4]  In addition to his claim that the stand had not been completed, Austin rested his defense on his assertion that he relied upon a magazine-type publication that he testified he received when he obtained his hunting license.  The publication, which was admitted in evidence, is entitled "Maine Hunting & Trapping," and it bears the IF&W logo on its cover, along with the statement, "The Official 2013-14 State of Maine Hunting & Trapping Laws and Rules."  One of the first pages of the publication contains messages from the Governor and the IF&W Commissioner, along with their photographs and the IF&W logo.  Austin referred to a highlighted box in the publication captioned "Observation Stands," which states in part:

> (10652, Subsection 1-B-1, 2)  It is unlawful to insert any metallic or ceramic object into a tree on land of another for the purpose of erecting a ladder or observation stand, unless you have permission from the landowner.  You must obtain verbal or written permission of the landowner (or representative) to erect and use a portable or permanent ladder or observation stand and the ladder or observation stand must be plainly labeled with a 2-inch by 4-inch tag identifying the name and address of the person or persons authorized by the landowner to use the observation stand or ladder.

Austin argued that the publication required that he "erect *and use*" (emphasis added) the stand before he was required to label it, and under that reading he was not guilty of the crime charged.

4

[¶5]    The court, finding that the stand was "clearly erected,"[2] noted the distinction between the use of "erect or use" in the first clause of 12 M.R.S. § 10652(1)(B)(2), and the publication's use of "erect and use," and was troubled by what it perceived to be an error in the publication:

> COURT:  It is undisputed that a document apparently put out by the Fish and Game Administration says—well it's an incorrect statement of the law. . . . [It's] clearly misleading.
>
> [STATE'S ATTORNEY]:  It is.
>
> . . . .
>
> COURT:  [I]t's extremely troubling to me that the Agency puts out a document which I understand everyone gets when they get a license— which just plain out misstates the law. . . . [I]t would be nice to have their publications consistent with what the law is, but I think Mr. Austin's defense in his own mind is that the tree stand wasn't finished.  And that's a losing argument for me. . . . There was testimony which I found probative that it could have been used.

[¶6]  Notwithstanding its misgivings, the court found that Austin's failure to label the stand was based on his assertion that it was unfinished and not on any misinformation in the magazine.  It also held that the language of the statute was controlling and found Austin guilty, saying, "I don't consider that [publication] a law book.  I consider it [to be] what it says it is, it's a magazine.  But it clearly misstates the law."  Taking the circumstances into account, the court imposed a $100 fine and suspended all of it, along with the surcharges.  Austin appealed.

---

[2]  On appeal, Austin has abandoned his assertion that the stand was unfinished.

## II. DISCUSSION

[¶7]  The court's concern was predicated, as are the parties' arguments here, on an assumption that the publication misstated the law, but a close reading of the statute compared with the publication demonstrates no misstatement or erroneous recitation of the law.  The court and the parties focused on the first clause of section 10652(1)(B)(2), which states that a hunter may not "erect *or* use" (emphasis added) a tree stand on another's land unless two conditions are met. Those conditions are (1) "[t]hat person has obtained oral or written authorization to erect *and* use a ladder or observation stand from the landowner or the landowner's representative," and (2) the stand is properly labeled.   12 M.R.S. § 10652(1)(B)(2)(a)-(b) (emphasis added).  The publication accurately states the two conditions: "You must obtain verbal or written permission of the landowner (or representative) to erect and use a portable or permanent ladder or observation stand and the ladder or observation stand must be plainly labeled . . . ."

[¶8]  The introductory clause that caused confusion does no more than state that both conditions must be met before erecting a tree stand, regardless of whether it is actually used or not.  Austin had the legal duty to (1) procure the permission of the landowner to erect and use the tree stand before starting the installation of the stand, which he did; and (2) label the stand, which he did not do.  It is the

6

conditions themselves that are the key provisions of the law, and the publication's recitation of those provisions was entirely accurate.[3]

[¶9] Having reached that conclusion, we turn to Austin's equitable estoppel argument, concerning which

> [w]e have recognized that the doctrine of equitable estoppel may prevent a governmental entity from discharging governmental functions or asserting rights against a party who detrimentally relies on statements or conduct of a governmental agency or official. To prove equitable estoppel against a governmental entity, the party asserting it must demonstrate that (1) the governmental official or agency made misrepresentations, whether by misleading statements, conduct, or silence, that induced the party to act; (2) the party relied on the government's misrepresentations to his or her detriment; and (3) the party's reliance was reasonable. When reviewing a defense of equitable estoppel against a governmental entity, we consider the totality of the circumstances, including the nature of the particular governmental agency, the particular governmental function being discharged, and any considerations of public policy arising from the application of estoppel to the governmental function.

*State v. Brown*, 2014 ME 79, ¶ 14, 95 A.3d 82 (citations and quotation marks omitted). It was Austin's burden to produce "clear and satisfactory proof" to support his claim of equitable estoppel, a doctrine that we apply "carefully and

---

[3] At oral argument, Austin said, with some urgency, "The youth of today need to know that on some level their government is honest and that their government is accountable, and certainly accountable for its own mistakes. It is for this Court to send that message." Although we agree with Austin's assertion that government must be accountable for its mistakes, no mistake is demonstrated in the record of this matter. Contrary to the argument advanced in Austin's filings, the opinion expressed by the State's attorney at trial concerning the accuracy of the publication does not foreclose our affirmance of the trial court's result, albeit in part on a different ground. *See Sears, Roebuck & Co. v. State Tax Assessor*, 2012 ME 110, ¶ 13, 52 A.3d 941 (affirming the judgment "under our alternative reasoning"; also collecting cases affirming trial court orders on other grounds).

sparingly. . . . particularly . . . when a party seeks to apply the doctrine against a government agency." *Id.* ¶ 15 (quotation marks omitted); *see id.* ¶ 20 (recognizing that "compelling policy reasons discourage applying equitable estoppel to restrict the government from undertaking its essential functions").

[¶10] Here, as we have explained, Austin failed to prove that IF&W made any misrepresentation in its publication; therefore he failed to satisfy the first element of his claim. Furthermore, concerning the second and third elements, which require that Austin prove his reliance on the allegedly incorrect statement, the trial court found that Austin's explanation for his actions was his claim that the stand was unfinished, and that the alleged misrepresentation did not "induce[] [Austin] to act." *Id.* ¶ 14; *see State v. Fletcher*, 2015 ME 114, ¶ 12, 122 A.3d 966 (stating that the Law Court "review[s] any factual findings for clear error"). Thus, Austin failed to prove any element of his equitable estoppel claim.

[¶11] Finally, in the absence of any misrepresentation by the State on which Austin relied to his detriment, the trial court correctly determined that the single source of controlling law was the statute duly enacted by the Legislature. It is a fundamental American principle that we are governed by the rule of law, and that all are presumed to know what the law is. *See Raynes v. Dep't of Corr.*, 2010 ME 100, ¶ 17, 5 A.3d 1038 (stating that "persons are presumed to know the law"); *State v. Fox*, 494 A.2d 177, 179 (Me. 1985) (same).

The entry is:

Judgment affirmed.

---

**On the briefs:**

Lawrence P. Bloom, Esq., Bloom & Bloom, Skowhegan, for appellant Harvey Austin Jr.

Maeghan Maloney, District Attorney, and Francis J. Griffin, Jr., Asst. Dist. Atty., Prosecutorial District IV, Augusta, for appellee State of Maine

**At oral argument:**

Lawrence P. Bloom, Esq., for appellant Harvey Austin Jr.

Francis J. Griffin, Jr., Asst. Dist. Atty., for appellee State of Maine