STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-CV-2017-14 ✓

WAWENOCK LLC, et al.          )
                              )
        Plaintiffs,           )
                              )
v.                            )          **ORDER ON PLAINTIFFS'**
                              )          **MOTION FOR PRELIMINARY**
STATE OF MAINE DEPARTMENT OF  )          **INJUNCTION PENDING APPEAL**
TRANSPORTATION,               )
                              )
        Defendant.            )
                              )
*********************************** )
                              )
TOWN OF WISCASSET,            )
                              )
        Party-in-Interest     )

Pursuant to M.R. Civ. P. 62(d) and 65, Plaintiffs Wawenock, LLC; Bermuda Isles, LLC; 48 Federal Street, LLC; and 32 Middle Street, LLC (collectively, "Plaintiffs") have moved this Court to enjoin Defendant Maine Department of Transportation ("MDOT") from demolishing Haggett's Garage as part of its streets alteration and widening project (the "Project") in the Town of Wiscasset, Maine ("Wiscasset" or "the Town"). Given the interest to all parties in resolving this matter as expeditiously as possible, the Court has decided to rule on the motion without hearing, as neither M.R. Civ. P. 62(d) nor 65 require a hearing prior to decision.

## PROCEDURAL HISTORY

Concurrent with their initial pleading in this matter, Plaintiffs filed a motion for preliminary injunction on February 14, 2017, seeking to "enjoin MDOT to suspend implementation of its Project, including its eminent domain taking process . . . ." (Mot. For Prelim. Inj. dated Feb. 14, 2017 at 14.) After this case was transferred to the Business and

1

Consumer Court, the Court held an initial Case Management Conference on April 7, 2017. At that conference, the Court told counsel that it would schedule Plaintiff's Motion for Preliminary Injunction for an evidentiary hearing in June. Faced with that information, Plaintiffs withdrew their motion for a preliminary injunction without objection and without prejudice, as memorialized in Paragraph 2 of this Court's Case Management Scheduling Order No. 1, entered April 12, 2017.

Plaintiffs thereafter filed their first amended complaint (the "Complaint") in this Court on June 14, 2017. Although the Complaint, like the pleading before it, sought an injunction against MDOT in its prayer for relief, Plaintiffs did not renew their motion for a preliminary injunction when they filed the Complaint. Several months later, this Court granted MDOT's motion for judgment on the pleadings in full and dismissed all counts of the Complaint in its order entered September 12, 2017 (the "Prior Order"). Plaintiffs subsequently filed a motion for reconsideration that this Court denied in its order entered November 1, 2017. On November 9, 2017, Plaintiffs filed a notice of appeal with this Court pursuant to M.R. App. P. 2A(1). On November 22, 2017, Plaintiffs filed the instant motion, a renewed motion for preliminary injunction, seeking to enjoin MDOT from demolishing Haggett's Garage. Plaintiffs allege MDOT plans to demolish the building on December 4, 2017. Given this Court's uncertain jurisdiction over the motion pending Plaintiffs' appeal to the Law Court, *see* M.R. App. P. 3(b),(c), Plaintiffs filed their motion with this Court and the Law Court on the same day.

## STANDARD OF REVIEW

This Court has discretionary authority over whether to order an injunction pending appeal, and its decision on a motion brought pursuant to Rule 62(d) is thus reviewed only for an

2

abuse of discretion. *Town of Pownal v. Emerson,* 639 A.2d 619, 621 (Me. 1994). *See also* 3 Harvey & Merritt, *Maine Civil Practice* §62:2 at 312 (3d, 2011 ed.).

## DISCUSSION

At the outset, the Court notes that its jurisdiction over the instant motion is uncertain. Plaintiffs bring their motion pursuant to M.R. Civ. P. 62(d) and 65. Motions brought pursuant to M.R. Civ. P. 62(d) are explicitly excepted from the appellate stay which bars the trial court from taking further action pending disposition of an appeal by the Law Court; those brought under Rule 65 are not. *See* M.R. App. P. 3(c)(2). Rule 62(d) permits the trial court to "suspend, modify, restore, or grant an injunction during the pendency of an appeal" when an appeal is taken from a final judgment "granting, dissolving, or denying an injunction." M.R. Civ. P. 62(d). This Court treats its September 12, 2017 order dismissing all counts of Plaintiffs' complaint as a final judgment denying an injunction in order to exercise jurisdiction over Plaintiffs' instant motion. Its jurisdiction to decide the instant motion established, the Court exercise its discretion under M.R. Civ. P. 62(d) and hereby **denies** the motion for two reasons.

First, Plaintiffs' attempt to renew their motion for a preliminary injunction in this Court comes too late. Plaintiffs moved for a preliminary injunction when they first filed their case with the Lincoln County Superior Court on February 14, 2017, and that motion was before this Court when the case was transferred thereafter. Plaintiffs then voluntarily withdrew that motion on April 7, 2017, and never renewed their motion until after the Court dismissed Plaintiffs' Complaint and Plaintiffs filed their notice of appeal. The Court will not grant Plaintiffs a second chance to argue for the appropriateness of a preliminary injunction when Plaintiffs already had the opportunity to be heard on this issue, and voluntarily suspended their right to renew that

3

opportunity, until after this Court entered the Prior Order dismissing the Complaint and Plaintiffs filed a notice of appeal.

Second, Plaintiffs' motion requires this Court to find that Plaintiffs would be harmed if MDOT demolishes Haggett's Garage. *See Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res.*, 2003 ME 140, ¶ 9, 837 A.2d 129 ("A party seeking injunctive relief by a temporary restraining order or a preliminary injunction has the burden of demonstrating . . . [ ] that it will suffer irreparable injury if the injunction is not granted. . . ."). To be clear, Plaintiffs do not allege that they have any legal interest in Haggett's Garage. Plaintiffs seek to enjoin its demolition on the theory that MDOT has violated state statutes and local ordinances by failing to elicit sufficient public participation in the condemnation proceedings that led to MDOT's taking the property by eminent domain. Plaintiffs cite *Roop v. City of Belfast*, 2007 ME 32, ¶ 10, 915 A.2d 966, for the proposition that the denial of a right to meaningful participation is an actionable injury. However, Plaintiffs have not alleged that *their* right to participate has been curtailed. Plaintiffs' pleadings redound with examples of their public opposition to the project. If anyone has been injured by the process that led to the condemnation and pending demolition of Haggett's Garage, he or she must come forward to a court of competent jurisdiction and seek relief. These Plaintiffs lack the authority to enjoin MDOT on that person's behalf, even if MDOT has violated state law or local ordinance in its taking of Haggett's Garage.

In their motion, Plaintiffs correctly note that the Town of Wiscasset does have this authority under its own ordinances and state law, as this Court noted in the Prior Order. *See* 11 M.R.S.A. § 651. Plaintiffs have suggested to the Court that the Town intends to file its own lawsuit against MDOT. Plaintiffs cite this development in support of their motion, arguing that enjoining MDOT from demolishing Haggett's Garage will give the Town time to prepare its own

4

complaint against MDOT. In effect, Plaintiffs ask the Court to allow them to act as "placeholder" for the Town, standing in the Town's shoes until the Town can file its own lawsuit and enjoin MDOT from proceeding with its project. But Plaintiffs cite no basis in law for this authority, and the Court has already found that Plaintiffs lack such authority in the Prior Order.

In essence, Plaintiffs invite this Court to revisit its decision that 23 M.R.S.A. § 73 and 11 M.R.S.A. § 651 lack a private right of action, an invitation that the Court already declined in its order on Plaintiffs' motion to reconsider. The Court declines to change course at this late hour, when final judgment has been entered and a notice of appeal has been filed.

## CONCLUSION

By reason of the foregoing IT IS HEREBY ORDERED:

That Plaintiffs' Motion for Preliminary Injunction Pending Appeal be **DENIED**.

The Clerk is instructed to enter this Order on the docket for this case by incorporating it by reference pursuant to M.R. Civ. P. 79(a).

Dated: November 27, 2017

Richard Mulhern
Judge, Business & Consumer Court

5

STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-CV-2017-14 ✓

WAWENOCK LLC, et al. )
)
        Plaintiffs, )
)
v. )
)
STATE OF MAINE DEPARTMENT OF )
TRANSPORTATION, )
)
        Defendant. )
)
************************************ )
)
TOWN OF WISCASSET, )
)
        Party-in-Interest )

**ORDER ON PLAINTIFFS'
MOTION FOR
RECONSIDERATION**

Pursuant to M.R. Civ. P. 7(b)(5) and 59(e), Plaintiffs Wawenock, LLC; Bermuda Isles, LLC; 48 Federal Street, LLC; and 32 Middle Street, LLC (collectively, "Plaintiffs") have moved this Court to reconsider its order entered September 12, 2017, granting Defendant Maine Department of Transportation's ("MDOT") motion for judgment on the pleadings. Specifically, Plaintiffs ask the Court to reconsider its decision as to Count I[1] of Plaintiff's Complaint. Defendants timely opposed the motion, and Plaintiffs timely replied. Pursuant to the discretion granted it by M. R. Civ. P. 7(b)(5),(7), the Court chose to rule on the motion without hearing.

## PROCEDURAL HISTORY

After this case was transferred to the Business and Consumer Court, Plaintiffs filed their nine-count first amended complaint (the "Complaint") against MDOT on June 14, 2017, alleging various wrongs on the part of MDOT and seeking declaratory and injunctive relief. Specifically,

---

[1] Plaintiffs have expressly reserved the right to raise future objections to other aspects of the Court's order.

1

Plaintiffs sought to have this court declare that MDOT had violated various Maine statutes as well as both the Maine and United States Constitutions and enjoin MDOT from proceeding to implement its proposed street alteration and widening project in the Wiscasset Historic District in the downtown area of the Town of Wiscasset in the State of Maine ("Wiscasset" or the "Town"). Wiscasset was named as a Party-in-Interest. MDOT filed its amended answer on July 7, 2017 and the Town filed its own answer July 12, 2017.

Concurrent with its amended answer, MDOT filed a motion for judgment on the pleadings, arguing that Plaintiffs could not obtain the relief sought under any legal theory, even taking all of the Plaintiff's factual allegations as true. *See* M.R. Civ. P. 12(c). *See also MacKerron v. MacKerron*, 571 A.2d 810, 813 ("A defendant's motion for judgment on the pleadings is the equivalent of a defendant's motion to dismiss for failure to state a claim."). In its order entered September 12, 2017, this Court granted MDOT's motion in full and dismissed all counts of the Complaint. Plaintiffs then brought the instant motion, suggesting that the Court had erred in determining that a private right of action could not be implied from 23 M.R.S.A. § 73 (the "Sensible Transportation Policy Act," hereafter the "STPA").

## STANDARD OF REVIEW

Under M.R. Civ. P. 7(b)(5), a motion for reconsideration "shall not be filed unless required to bring to the court's attention an error, omission, or new material that could not previously have been presented." "Rule 7(b)(5) is intended to deter disappointed litigants from seeking 'to reargue points that were or could have been presented to the court on the underlying motion.'" *Shaw v. Shaw*, 2003 ME 153, ¶ 8, 839 A.2d 714 (quoting M.R. Civ. P. 7(b)(5) advisory committee's notes to 2000 amend., 3A Harvey & Merritt, *Maine Civil Practice* 270 (3d, 2011 ed.)). "A motion for reconsideration of the judgment shall be treated as a motion to alter or amend the judgment." M.R.

2

Civ. P. 59(e). A trial court's ruling on a motion for reconsideration is reviewable for an abuse of discretion. *Shaw*, 2003 ME 153, ¶ 12, 839 A.2d 714.

## DISCUSSION

The Court notes that much of Plaintiffs' motion consists of reargument of issues already litigated by the parties relating to whether the STPA allows a private right of action for its enforcement, and appropriately disregards that aspect of Plaintiffs' motion. *See* M.R. Civ. P. 7(b)(5) advisory committee's notes to 2000 amend., 3A Harvey & Merritt, *Maine Civil Practice* 270 (3d, 2011 ed.) (explaining that motions to reconsider are "not encouraged" and that "too frequently, disappointed litigants bring motions to reconsider . . . solely to reargue points that were . . . presented to the court on the underlying motion.").

However, on reconsideration, the Court recognizes that certain language in its September 12 order could be read as mischaracterizing the law regarding statutory analysis of laws passed through citizen initiative. Specifically, on page 6 of its order, the Court notes that it was the legislature's intent that the STPA never be made law because the STPA was enacted by citizen's initiated referendum and not the elected legislature. The Court then states that "pursuing the intent of the legislature is not a meaningful exercise." Understandably, Plaintiffs interpreted this to mean that the Court considered the legislature's failure to pass the STPA in concluding that the STPA did not provide a private right of action. If this were true, it would be a prejudicial error of law, and thus a Rule 7(b)(5) motion for reconsideration is the proper procedural mechanism for bringing the purported error to the Court's attention. *See* M.R. Civ. P. 7(b)(5). The Court thus takes this opportunity to clarify its analysis regarding the STPA's lack of a private cause of action.

The lack of an express private right of action generally means there is no private right of action and our Law Court is "hesitant to imply [one]." *Charlton v. Town of Oxford*, 2001 ME 104,

3

¶ 15, 774 A.2d 366. Absent express language authorizing a private right of action, "the key to determining whether there is an implied cause of action lies in the legislative intent, expressed either in the statute or the legislative history." *Id.* "Citizen initiatives are reviewed according to the same rules of construction as statutes enacted by vote of the Legislature." *Opinion of the Justices*, 2017 ME 100, ¶ 59, 162 A.3d 188. *Accord People v. Buford*, 4 Cal. App. 5th 886, 905 (Ct. App. Cal. 5th D. Oct. 27, 2016); *Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 193 (Alaska 2007). Thus, if a private right of action is neither express nor implicit in the text of a statute enacted pursuant to a citizens' referendum, the court must proceed hesitatingly to the legislative history to determine whether the voters intended to create a private right of action.

This Court declined to consider the testimony of then-MDOT Commissioner Dana Connors ("Commissioner Connors") before the Legislature's Committee on Transportation ("Transportation Committee") as having a bearing on that analysis, and because neither the Plaintiffs nor MDOT presented the Court with any other evidence probative of the citizens' intent to authorize a private right of action, the Court applied the default rule that the absence of an express right of action means that there is no private right of action. *Charlton*, 2001 ME 104, ¶ 15, 774 A.2d 366.

Commissioner Connors' testimony before the Transportation Committee is not useful to the Court in determining whether a private right of action can be implied in this statute for two main reasons. First, Commissioner Connors' statement to the Transportation Committee has been incompletely quoted by Plaintiffs. Plaintiffs quote Commissioner Connors as saying that the STPA "would give anyone the ability to stop a road improvement project by intervening . . . ." In fact, Commissioner Connors said "*I also fear that* this new policy would give anyone the ability to stop a road improvement project by intervening . . . ." (emphasis added). This makes it clear

4

that Commissioner Connors was not offering an authoritative interpretation of the STPA, but rather expressing his concern with a possible interpretation in his successful argument to the Transportation Committee urging them to reject the bill.[2]

Second, Plaintiffs do not explain how Commissioner Connors' committee testimony had any bearing on the voters' intent to create a private right of action in the statute. Plaintiffs cite *Buford*, 4 Cal. App. 5th at 905 and *Alaskans for a Common Language, Inc.*, 170 P.3d at 193, for the proposition that courts may consider a wide variety of extrinsic aids to discern the voters' intent in construing a statute passed by citizens' referendum. However, the extrinsic aids suggested in those cases are either familiar components of statutory construction or particularly helpful in discerning what the voters' intended to enact, *e.g.* an official ballot pamphlet.[3] *Buford*, 4 Cal. App. 5th at 906. *See Alaskans for a Common Language, Inc.*, 170 P.3d at 193 ("[W]hen we review a ballot initiative . . . we attempt to place ourselves in the position of the voters at the time the initiative was placed on the ballot, and we try to interpret the initiative using the tools available to the citizens of this state at that time.").

The Law Court has implicitly authorized courts to consider the testimony of heads of executive agencies to legislative committees when analyzing the legislative history of a statute to determine legislative intent. *Me. Ass'n of Health Plans v. Superintendent of Ins.*, 2007 ME 69, ¶ 50, 923 A.2d 918. That case, however, dealt with a statute passed by the legislature, not by the

---

[2] Plaintiffs' suggest that Commissioner Connors' testimony before the Transportation Committee estops MDOT from arguing that the STPA lacks a private right of action under either an equitable estoppel or judicial estoppel theory. Neither doctrine applies. *See State v. Austin*, 2016 ME 14, ¶ 9, 131 A.3d 377; *HL 1, LLC v. Riverwalk, LLC*, 2011 ME 29, ¶ 30, 15 A.3d 725.

[3] *Buford* also suggests that courts consider "contemporaneous administrative construction" when construing statutes. *Buford*, 4 Cal. App. 5th at 906. This refers to official agency interpretations of ambiguous statutes pursuant to their rulemaking authority, not the testimony of an agency spokesperson to a legislative committee urging them to vote a certain way on a proposed piece of legislation. *Id.*

citizens in a referendum. *Id.* ¶ 5. The distinction is meaningful. While it is logical to assume that committee testimony influences *legislators'* votes, it is not so apparent that it influences the *citizens* who vote on an initiated bill in a referendum.[4] While Plaintiffs urge this Court to consider Commissioner Connors' testimony now, they do not claim that Maine's citizens considered it when they voted to enact the STPA. In sum, there is no basis for the Court to conclude that statements made at a legislative hearing in opposition to an initiated bill can be used to determine the intent of voters in a referendum, nor do Plaintiffs offer one.

Plaintiffs' remaining arguments do not bring to the court's attention an error, omission, or new material that could not previously have been presented. M.R. Civ. P. 7(b)(5). The Court is therefore within its discretion to decline to consider those portions of the motion as improper reargument without reaching the merits of the argument.

**CONCLUSION**

Based on the foregoing IT IS ORDERED:

That Plaintiffs' motion for reconsideration be denied.

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: November 1, 2017

Richard Mulhern
Judge, Business & Consumer Court

Entered on the Docket: 11-1-17
Copies sent via Mail __ Electronically _✓

---

[4] The Court had further reason to credit the agency head's testimony in *Me. Ass'n of Health Plans* because the Governor had proposed the legislation at issue. 2007 ME 69, ¶ 7, 923 A.2d 918. Here, on the pleadings it is evident that MDOT was fiercely opposed to the STPA and was not involved in its drafting.

**Wawenock LLC, et al. v. State of Maine DOT**

**BCD-CV-2017-14**

Wawenock, et al.

Robert Hark, Esq.
75 Pearl Street
Suite 209
Portland, ME 04101

And

Peggy McGhee, Esq.
One Canal Plaza
Suite 900
PO Box 426
Portland, ME 04112-0426

State of Maine DOT

Nathaniel Rosenblatt, Esq.
Kate Grossman, Esq.
PO Box 738
Bangor, ME 04401-0738

And

James Billings, Esq.
6 State House Station
Augusta, ME 04333-0016

*PII*
Town of Wiscasset

Shana Cook Mueller, Esq.
Asha Acheverria, Esq.
Meredith Eilers, Esq.
PO Box 9729
100 Middle Street
Portland, ME 04104-5029



STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-CV-2017-14 ✓

WAWENOCK LLC, et al.          )
                             )
        Plaintiffs,           )
                             )
v.                           )      ORDER ON DEFENDANT STATE
                             )      OF MAINE DEPARTMENT OF
STATE OF MAINE DEPARTMENT OF  )      TRANSPORTATION'S MOTION
TRANSPORTATION,               )      FOR JUDGMENT ON THE
                             )      PLEADINGS
        Defendant.            )
                             )
*********************************** )
                             )
TOWN OF WISCASSET,            )
                             )
        Party-in-Interest     )

This matter is before the Court on Defendant State of Maine Department of

Transportation's ("MDOT") motion for judgment on the pleadings brought pursuant to M. R.

Civ. P. 12(c). On July 7, 2017, Defendant MDOT moved for judgment on the pleadings on all

counts brought against it by Plaintiffs Wawenock, LLC; Bermuda Isles, LLC; 48 Federal Street,

LLC; and 32 Middle Street, LLC (collectively, "Plaintiffs."). Plaintiffs' Objection was timely

received by the Court on July 27, 2017, and the Court received MDOT's Reply Memorandum on

August 3, 2017. Pursuant to the discretion granted it by M. R. Civ. P. 7(b)(7), the Court chose to

rule on the motion without hearing.

## BACKGROUND[1]

---

[1] The facts as outlined herein are derived from the allegations made in Plaintiff's First Amended Complaint, which
the Court must assume to be true for purposes of a motion for judgment on the pleadings. *See Cunningham v. Haza*,
538 A.2d 265, 267 (Me. 1988).

i

Wiscasset (or the "Town") is a town located in Lincoln County, Maine. (Plaintiff's First Amended Complaint ¶ 3) (hereafter P.F.A.C. ¶ __). In downtown Wiscasset lies Wiscasset Village, which is listed in the National Registry of Historic Places. (P.F.A.C. ¶ 6). Plaintiffs are limited liability companies that own property within Wiscasset Village. (P.F.A.C. ¶ 1). A Maine State highway, U.S. Route 1, passes through Wiscasset Village. (P.F.A.C. ¶¶ 9, 87). Wiscasset Village is protected by the Town's historic preservation ordinance and site planning ordinance. (P.F.A.C. ¶ 10). The Town's comprehensive plan calls for the preservation of the Town's historic character. (P.F.A.C. ¶¶ 10-12).

MDOT has proceeded to implement a street alteration and widening project in Wiscasset called the Wiscasset Downtown Improvement Project ("Project"). (P.F.A.C., "Summary of Claims" at 1). The Project involves street alterations to Route 1/ Main Street where it passes through Wiscasset Village. (P.F.A.C. ¶ 81). The Project also involves street alterations to Middle Street, Water Street, and Railroad Avenue in Wiscasset Village. (P.F.A.C. ¶¶ 82-85).

In a March 2016 public informational meeting, MDOT advised Town voters of its plans to widen and alter Route 1 in Wiscasset to help address summer disruption of regional traffic flow. (P.F.A.C. ¶ 12). At the same meeting, MDOT presented Town voters with two options it was considering undertaking to complete the Project, and assured Town voters that they could decide to accept either one of MDOT's options, or do nothing, by means of an advisory referendum vote. (P.F.A.C. ¶ 14). In June 2016, MDOT presented Wiscasset voters with an advisory referendum, and Wiscasset voters approved the proposed "Option 2 Project.[2]" (P.F.A.C. ¶ 16). After the vote, MDOT announced a number of material changes to the Project from what was presented at the March 2016 informational meeting. (P.F.A.C. ¶ 17). MDOT has asserted

_____

[2] As the Option 2 Project was the Wiscasset Downtown Improvement Project approved by voters, and is the only option MDOT is pursuing, (P.F.A.C. ¶¶ 13, 16, 22), all further references to the Project refer to the Option 2 Project.

2

that it intends to commence construction of the Project in 2017. (P.F.A.C. ¶ 22).

In August 2016, and again in September 2016, MDOT presented the Town Board of Selectmen ("Board") with a contract committing the town to pay for certain Project expenses. (P.F.A.C. ¶ 30). The Board did not sign the contract; however, the Board did acknowledge MDOT's "letter of intent" relating to the project. (P.F.A.C. ¶ 31).

On September 16, 2016, MDOT commenced its eminent domain taking process by sending Plaintiffs forms to submit to MDOT and advising Plaintiffs that the Project had been initiated. (P.F.A.C. ¶ 18). On December 3, 2016, MDOT sent Plaintiffs an eminent domain notice. *Id.*

Plaintiffs commenced suit by filing a Petition with the Lincoln County Superior Court seeking declaratory relief pursuant to 14 M.R.S.A. §§ 5951-5963 and invoking this Court's equity jurisdiction pursuant to 14 M.R.S.A. § 6051(13) for injunctive relief, claiming that there is no plain, adequate, and complete remedy available to Plaintiffs at law. (P.F.A.C. ¶ 4) The matter was later transferred to the Business and Consumer Docket.

In their First Amended Complaint, Plaintiffs pray for relief based on the following counts making these claims: (I) MDOT has failed to comply with statutes and regulations; (II) MDOT's breach of its legal obligations is inconsistent with any finding of public necessity to take Plaintiffs' property; (III) MDOT wrongfully obtained Town Selectmen's "acknowledgement" of MDOT's letter of intent; (IV) Violation of 30-A M.R.S.A § 4352(6) as the Project does not comply with the Town's Historic Preservation Ordinance; (V) Violation of 30-A M.R.S.A § 4352(6) as the Project does not comply with the Town's Site Plan Review Standards; (VI) Violation of 30-A M.R.S.A § 4352(6) as the Project does not comply with the Town's comprehensive plan; (VII) MDOT has violated Plaintiffs' rights to due process; (VIII)

3

MDOT has violated Plaintiffs' civil rights pursuant to 42 U.S.C. § 1983; (IX) MDOT lacks requisite right, title, and interest to construct the Project.

## STANDARD OF REVIEW

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." M. R. Civ. P. 12(c). A defendant's motion for judgment on the pleadings "is the equivalent of a defendant's motion to dismiss for failure to state a claim." *Temple v. DiPietro*, 2015 ME 166, ¶ 30, 130 A.3d 368 (citing *MacKerron v. MacKerron*, 571 A.2d 810, 813 (Me. 1990)). *See* M. R. Civ. P. 12(b)(6). "Both a motion to dismiss for failure to state a claim and a motion for judgment on the pleadings test the legal sufficiency of the complaint." *MacKerron*, 571 A.2d at 813 (citing 1 Field, McKusick & Wroth, *Maine Civil Practice*, § 12.14 at 253 (2d ed. 1970)) (quotation marks omitted). For purposes of considering this motion, the Court must examine the complaint in the light most favorable to the Plaintiffs and assume that all factual allegations are true. *Cunningham v. Haza*, 538 A.2d 265, 267 (Me. 1988). However, the Court is not required to accept as true the Plaintiffs' conclusions of law. *See, e.g., Seacoast Hangar Condominium II Ass'n v. Martel*, 2001 ME 112, ¶ 16, 775 A.2d 1166; *Larrabee v. Penobscot Frozen Foods*, 486 A.2d 97, 98 (Me. 1984); *Beckett v. Roderick*, 251 A.2d 427, 430 (Me. 1969).

## DISCUSSION

I.   COUNT I: MDOT FAILURE TO COMPLY WITH STATE STATUTE AND MDOT REGULATIONS

In Count I of their Complaint, Plaintiffs allege that MDOT has violated two State statutes, 23 M.R.S. §§ 73 and 651, as well as MDOT's own Rule enacted pursuant to 23 M.R.S.

4

§73; 17-229 C.M.R., ch. 103, §4(A). Even assuming that there has been a violation,[3] Plaintiffs cannot recover in a private action brought pursuant to the authority cited.

A. Legal Standard

As a general matter, the absence of an express statutory private right of action means there is no private right of action. *Charlton v. Town of Oxford*, 2001 ME 104, ¶ 15, 774 A.2d 366. While in some instances the Court may imply a private right of action, our Law Court has stated that it is "hesitant to imply a private right of action" where it is not "expressly stated that a cause of action exists." *Id*. Absent such express language, "the key to determining whether there is an implied cause of action lies in the legislative intent, expressed either in the statute or the legislative history." *Id*.

B. The Sensible Transportation Act: 23 M.R.S. § 73

Section 73 of Title 23 of the Maine Revised Statutes, also known as the Sensible Transportation Act ("STA"), *see* 23 M.R.S.A. § 73(1), requires a public participation process for expressing comments and concerns related to transportation planning decisions, capital investment decisions, and project decisions; and further demands that MDOT "shall take the comments and concerns of local citizens into account and must be responsive to them." 23 M.R.S.A. § 73(3)(3)(G). The MDOT has promulgated rules to implement the public participation requirements of the STA. *See* 17-229 C.M.R., ch. 103, § 4.

The STA contains no express language authorizing a private cause of action. Thus, the Court must then proceed in its inquiry into whether such a private right of action may be implied by looking to the legislative intent as expressed in either the text of the statute or the legislative

---

[3] The Court is not required to accept as true Plaintiffs' legal conclusion that the facts alleged amount to a violation of the statutes and regulation cited. Because the question of whether a violation has occurred is unnecessary in deciding this Motion, the Court does not consider the issue and expresses no opinion on the matter.

5

history. As there is nothing in the text of the statute from which the Court can imply a private right of action, the Court proceeds to the legislative history for evidence of legislative intent to imply a private cause of action.

Here, it was the intent of the legislature that the STA never be made law: the STA was first presented to the Legislature's Committee on Transportation on a citizen's initiative, where the committee killed the bill with a unanimous vote of "ought not to pass." Committee Report, Committee on Transportation, L.D. 719 (115th Legis. 1991). The STA became law after it was approved by the voters in a State-wide referendum. 1991 I.B., c.1, § 1. Thus, pursuing the intent of the legislature is not a meaningful exercise. Because the text of the statute includes no language authorizing a private right of action or suggesting that the drafters intended there to be one, the Court declines to imply such a right. Regardless of whether there has been a violation of 23 M.R.S.A. § 73, Plaintiffs cannot recover under this statute.

The Court's finding that the STA lacks a private cause of action distinguishes the instant case from *Roop v. City of Belfast*, 2007 ME 32, 915 A.2d 966. In that case, the defendant city raised the argument that no private cause of action existed under the statute relied upon by plaintiffs for the first time on appeal during oral argument. *Id.* ¶ 9, n. 2. As such the case was decided on the issue of standing, not whether there was a private right of action available to plaintiffs. Here, because the Court explicitly finds that Plaintiffs cannot sue under the STA because the statute affords no private cause of action, the issue of standing is irrelevant.

C. State and State Aid Highways: 11 M.R.S.A. § 651

Section 651 of Title 23 of the Maine Revised Statutes, titled "State and state aid highways," requires MDOT to "take into consideration the interests of a municipality as to the location of any state or state aid highway construction or alteration within the boundaries of the

6

municipality." Like the STA, section 651 does not expressly create a private right of action, and so the Court must be hesitant to imply one.

However, the analysis under section 651 is simpler, because there is no need to proceed to the legislative history in order to determine the legislative intent. The intent of the legislature is clearly indicated in the text of the statute: the right to claim a violation of the statute lies exclusively with the municipality. Other parts of the statute not relevant to Plaintiffs' claim state that "[t]he department, in consultation with a *municipality*, may preserve and develop the natural scenic beauty along and adjacent to any state or state aid highway . . . . The department shall consult with each *municipality* traversed by a state or state aid highway on the placement of utility poles and signs . . ." 11 M.R.S.A. § 651 (emphasis added).

Plaintiffs argue that section 651 does not state that only a municipality as a "corporate entity" may bring a claim under the statute, and that as Wiscasset property owners and taxpayers they are well suited to bring an action under section 651. But nowhere in the Maine Revised Statutes Annotated do the words "as a corporate entity" appear, presumably because a reasonable person would understand references to "municipalities" to mean exactly that. If Plaintiffs believe that the Town is failing to adequately represent its property owners and taxpayers then their remedy is political and lies with the Town government. Plaintiffs are free to lobby the Town government and the Town's voters, and the Complaint shows they are actively pursuing this strategy. (P.F.A.C. ¶¶ 15, 18, 20).

D. Conclusion

Neither of the statutes cited by Plaintiffs expressly authorize a private right of action, and the Plaintiffs have presented no argument to imply one. Therefore, even if there has been a violation of either statute, these Plaintiffs have no right to bring suit thereunder. Because

7

Plaintiffs can be awarded no remedy under either statute, declaratory or injunctive, the Court declines to consider the issue of whether Plaintiffs have adequately pleaded the necessary elements for a preliminary injunction to issue. The Court therefore **GRANTS** Defendant MDOT's motion for judgment on the pleadings in its favor as to Count I and dismisses Count I for failure to state a claim for which relief may be granted.

## II.     COUNT II: BREACH OF LEGAL OBLIGATIONS INCONSISTENT WITH FINDING OF PUBLIC NECESSITY TO TAKE PLAINTIFF'S PROPERTY

Plaintiffs allege that MDOT has commenced its eminent domain taking process by sending forms to Plaintiffs on September 16, 2016 and "eminent domain notices" on December 3, 2016. (P.F.A.C. ¶ 18). Even assuming that MDOT has commenced its eminent domain taking process against these Plaintiffs, the matter is not yet ripe for judicial consideration.

The doctrine of ripeness is meant to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements [and] protect [administrative] agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967). When dealing with a potential review of the activities of a governmental agency, special considerations of judicial restraint are involved. *Roy v. Augusta*, 414 A.2d 215, 217 (Me. 1980). The Court must consider whether administrative proceedings have achieved a stage that is "ripe" for judicial consideration and action before accepting a case for judicial review. *Town of Levant v. Seymour*, 2004 ME 115, ¶ 16, 855 A.2d 1159.

Given these special considerations of judicial restraint in reviewing agency actions, the Law Court has shown increasing reluctance to permit collateral review of governmental action by means of an independent action, whether in equity or otherwise. 3 Harvey & Merritt, *Maine Civil Practice* §80B:1 at 428-29 (3d., 2011 ed.). For example, in *Schmidt v. Northfield*, 534 A.2d

8

1314 (Me. 1987), Plaintiffs sought a court order compelling the Defendant Planning Board to accept and act upon building permits to be sought by the Plaintiffs or their successors in interest *before* actually applying for the building permits or having them formally denied. *Id.* at 1317. The Law Court affirmed the Superior Court's dismissal, holding that there was no controversy before the Superior Court ripe for its consideration until an application for a building permit had actually been submitted by a party to the litigation and denied by the Planning Board. *Id. See also Me. Water Co. v. Pub. Utils. Com.*, 388 A.2d 493, 499 (Me. 1978).

Here, as in *Schmidt*, there is no genuine controversy ripe for judicial review. Even if MDOT has commenced condemnation proceedings against Plaintiffs, Plaintiffs point to no MDOT action in furtherance of this goal beyond sending Plaintiffs "forms" and an "eminent domain notice." The decision of MDOT to send correspondence to Plaintiffs is hardly a final administrative determination suitable for judicial review. As Plaintiffs have failed to allege a concrete, certain, or immediate harm that they themselves have suffered as a result of MDOT decision making, the Court must dismiss Count II for failure to state a claim for which relief may be granted.

Plaintiffs argue that they are not challenging an administrative "decision," but instead the "process" by which that decision is being made. However, such an argument would allow any would-be plaintiff disgruntled with a State agency to make an impermissible end-run around the ripeness doctrine. State agencies and courts alike would find themselves bogged down in "process" litigation before the process resulted in a final administrative decision which would itself be subject to judicial review: exactly the result that a threshold ripeness determination is meant to avoid. *See Abbott Laboratories*, 387 U.S. at 148. Plaintiffs point out that property owners can challenge the process used by MDOT to determine a public exigency. *See Portland*

*Co. v. City of Portland*, 2009 ME 98, ¶ 26, 979 A.2d 1279. *See also Dyer v. Dep't of Transportation*, 2008 ME 106, ¶ 19, 951 A.2d. But in the cases cited, Plaintiffs sought judicial review only *after* their property had been taken through eminent domain. *Portland Co.*, 2009 ME 98, ¶¶ 9-13, 979 A.2d 1279; *Dyer v. Dep't of Transportation*, 2008 ME 106, ¶¶ 8-9, 951 A.2d 821.

Because Plaintiffs have failed to allege that MDOT has reached a final administrative decision resulting in present, concrete harm to Plaintiffs, Count II must be dismissed as unripe. The Court therefore **GRANTS** Defendant MDOT's motion for judgment on the pleadings as to Count II.

III.    COUNT III: MDOT WRONGFULLY OBTAINED TOWN SELECTMEN'S "ACKNOWLEDGMENT" OF MDOT'S LETTER OF INTENT

In Count III, Plaintiffs allege that MDOT persuaded the Board to execute an acknowledgment of intent that the Town pay for certain Project construction and maintenance costs. (P.F.A.C. ¶¶ 30-31, 49-50). Despite claiming that such persuasion was wrongful, the Plaintiffs allege no facts that would show MDOT somehow coerced, manipulated, pressured, or threatened the Board. However, Plaintiffs do assert the legal conclusion that the Town Board has no authority to commit to the expenditure of funds without Town approval by Town meeting vote. Therefore, it appears that the Plaintiffs contend that requesting the Board acknowledge the letter was itself wrongful. But this cannot be correct, as 30-A M.R.S.A. § 2635 states that "the board of selectmen as a body shall exercise all administrative and executive powers of the town." As the administrative and executive branch of municipal government, the Board must have the authority to communicate with State agencies. Indeed, as discussed above, MDOT is required to solicit the participation of the municipalities through which its projects pass. *See* 11 M.R.S.A. § 651.

10

The Court has reviewed the letter of intent as it is referred to in the complaint and is central to Count III, and may therefore be considered without converting the motion to one for summary judgment. *See Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 11, 843 A.2d 43. It is clear from its text that the letter does not obligate the Town to pay for anything. Furthermore, even if it did, Plaintiffs' cause of action would not be against MDOT, but against the Town, as Plaintiffs do not allege any facts to suggest that MDOT coerced the Board into signing the letter.

In short, Plaintiffs have failed to allege either a wrong or an injury resulting from the Town Select Board's acknowledgement of MDOT's letter of intent. Plaintiffs have thus failed to state a claim upon which relief can be granted in Count III and the Court must dismiss it. Defendant MDOT's Motion for Judgment on the Pleadings is **GRANTED** as to Count III.

## IV. COUNTS IV AND V: VIOLATIONS OF TOWN ORDINANCES

Count IV and Count V allege, respectively, a failure to comply with the Town's Historic Preservation Ordinance ("HPO") and Site Plan Review Ordinance ("SPRO"). *See* Wiscasset, Me., Historic Preservation Ordinance §§ 10.5.1.1(b)-(f), 10.7.1.4. *See also* Wiscasset, Me., Site Plan Review Ordinance Art. VIII § 2-9. Plaintiffs argue that this amounts to a violation[4] of 30-A M.R.S.A. § 4352(6) such that declaratory relief under 14 M.R.S.A. § 5954 is appropriate. Even assuming that MDOT's actions amount to a violation of the Town's ordinances or State statute, Plaintiffs' claims under Counts IV and V must fail as a matter of law, because there is no private right of action available under 30-A M.R.S.A. § 4352(6) and these Plaintiffs lack standing to

---

[4] The Court need not accept as true the legal conclusion that MDOT has failed to comply with either the HPO or the SPRO, nor that such failure amounts to a violation of 30-A M.R.S.A. § 4352(6). *See Seacoast Hangar Condominium II Ass'n*, 2001 ME 112, ¶ 16, 775 A.2d 1166. However, whether there has been a violation is irrelevant to the Court's decision on this motion and so the Court assumes a violation without expressing any opinion either way on the matter. *See Bean*, 2008 ME 18, ¶ 7, 939 A.2d 676.

11

bring a suit under the statute.

As business entities that own property in Wiscasset, Plaintiffs do not have a private right of action to enforce the Town's historic preservation or site plan ordinances even if those ordinances are considered to be "zoning ordinances" as that term is used in 30-A M.R.S.A. § 4352(6). All proceedings arising under municipal ordinances must be brought in the name of the municipality. 30-A M.R.S.A. § 4452(4). The Law Court has held unambiguously that private parties, even abutting landowners, lack standing to initiate proceedings to enforce municipal ordinances even if it is determined that there has been a violation. *Herrle v. Town of Waterboro*, 2001 ME 1, ¶ 11, 763 A.2d 1159.

Plaintiffs concede as much on page 16 of their Objection to Defendant's Motion for Judgment on the Pleadings, claiming that a declaratory judgment in their favor will "serve the needs of the Town" which has "the responsibility to enforce the HPO[.]" This attempt to draw a distinction between a declaratory judgment action seeking injunctive relief based on the HPO and an action to enforce the HPO fails as a matter of law. *See Charlton*, 2001 ME 104, ¶ 17, 774 A.2d 366. It is the Town's exclusive prerogative to pursue enforcement of its own municipal laws, and Plaintiffs may not seek relief for violations of ordinances no matter how helpful such relief may be to the Town in its own independent action to enforce Town ordinances.

Because only the Town, and not these Plaintiffs, may seek enforcement of either the HPO or SRPO under 30-A M.R.S.A. § 4352(6), Count IV and Count V must be dismissed. Defendant MDOT's motion for judgment on the pleadings is therefore **GRANTED** as to Count IV and Count V.

V.    COUNT VI: MDOT'S PROJECT DOES NOT COMPLY
      WITH THE TOWN'S COMPREHENSIVE PLAN

In Count VI, Plaintiffs allege that the Project does not comply with the Town's

12

Comprehensive Plan. (P.F.A.C. ¶¶ 67-70). Even assuming a violation of the Comprehensive Plan, Plaintiffs cannot recover for such a violation. Count VI clearly fails to state a claim for which relief can be granted, and so the Court must enter judgment on the pleadings in favor of MDOT as to Count VI.

At the outset, Plaintiffs implicitly concede that they cannot recover for a violation of the Town's Comprehensive Plan on page 14, note 14 of their Objection to Defendant's Motion for Judgment on the Pleadings. Regardless of this concession, the Law Court has clearly held that a municipality's comprehensive plan is "just that—a plan—and the ordinances adopted pursuant to the plan are its regulatory teeth." *Nestle Waters N. America, Inc. v. Town of Fryeburg*, 2009 ME 30, ¶ 19, 967 A.2d 702. Neither these Plaintiffs nor anyone else can sue to enforce the comprehensive plan, as it is "visionary, not regulatory." *Id.* ¶ 16.

Because Plaintiffs cannot recover for a violation of the Town's Comprehensive Plan, Count VI must be dismissed for failure to state a claim for which relief can be granted. Defendant MDOT's motion for judgment on the pleadings is therefore **GRANTED** as to Count VI.

VI. COUNTS VII AND VIII: VIOLATIONS OF PLAINTIFFS' RIGHT TO DUE PROCESS AND OTHER CONSTITUTIONAL RIGHTS

Count VII alleges a violation of Plaintiffs' right to due process guaranteed by U.S. Const. amend. XIV, § 1 and Me. Const. art. I, § 6-A. (P.F.A.C. ¶¶ 71-77). Count VIII repeats this allegation but claims further relief for the violation under 42 U.S.C. § 1983. (P.F.A.C. ¶ 79). These counts are grounded in the same allegation as Count II; specifically, that MDOT has abused the process by which it is commencing a taking of Plaintiffs' property through eminent domain. (*See* P.F.A.C. ¶¶ 18, 38-46).

The Court dismisses Counts VII and VIII for the same reason it must dismiss Count II:

there having been no final administrative action for the Court to review regarding the taking of Plaintiffs' property, the issue is not yet ripe for judicial consideration. *See* Part II, *supra*, of this Order. The Court is further motivated to dismiss these claims as Plaintiffs implicitly concede on page 17 of their Objection to Defendant's Motion for Judgment on the Pleadings that the constitutional issues may never be reached. *See Osier v. Osier*, 410 A.2d 1027, 1029 (Me. 1980). In this case it is unnecessary to consider the constitutional issues raised by Plaintiffs because the Court has already dismissed the underlying statutory claims as unripe.

Plaintiffs have failed to state a claim for which relief may be granted in Counts VII and VIII. Defendant's motion for judgment on the pleadings is therefore **GRANTED** as to Counts VII and Count VIII.

## VII. COUNT IX: MDOT LACKS REQUISITE RIGHT, TITLE, AND INTEREST TO CONSTRUCT THE PROJECT

In Count IX, Plaintiffs allege that MDOT lacks the requisite right, title, and interest in some portions of Main Street and the entirety of Middle Street, Water Street, and Railroad Avenue, and as such it does not have the requisite ownership rights to construct the Project. (P.F.A.C. ¶¶ 87-89). Because there is no legal basis on which Plaintiffs have standing, or can assert a cause of action, to require that MDOT make the project-wide showing of ownership that the Plaintiffs are seeking, Count IX must fail as a matter of law.

Plaintiffs cite *Lamb v. Euclid*, 563 A.2d 365 (Me. 1989) as holding that abutters have the right to challenge construction on a town road by a third party who does not have right, title, and interest in the road. *Id.* at 366. But that case was an action for trespass, and the Law Court merely held that the Superior Court had improperly shifted the burden to plaintiffs to establish their ownership to the centerline of the road. *Id.* at 367-68. Furthermore, that case dealt with a private

14

party—not a governmental entity—making improvements to a town road.[5] *Id.* at 365-66.

Here, by granting Defendant MDOT's judgment on the pleadings as to Count IX, the Court is not impermissibly shifting the burden onto Plaintiffs to show that they own a fee interest to the centerline of the road because the Court does not need to reach that issue. Plaintiffs do not allege that any trespass has occurred. Nothing in *Lamb* suggests that an abutting property owner can demand that MDOT make a project-wide showing of requisite right, interest, and title to State and Town roads before commencing a street alteration and widening project.

## CONCLUSION

The Court has reviewed all of Plaintiffs' allegations against MDOT and determined that even if all of the facts alleged are true, Plaintiffs have failed to state any claims for which this Court may grant relief. Defendant MDOT's motion for judgment on the pleadings is therefore **GRANTED** in full as to all counts and

IT IS ORDRED:

That judgment be entered for the Defendant State of Maine Department of Transportation on all Counts.

Pursuant to M. R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated: September 11, 2017

Richard Mulhern
Judge, Business & Consumer Court

---

[5] *Cole v. Sprowl*, 35 Me. 161 (1852), also cited by Plaintiffs, likewise deals with a private party blocking a plaintiff's use of the road and merely held that an abutting landowner may recover against that private party for damages resulting from the deprivation of the landowner's use of the road and his property. *Id.* at 168.

15